## DARROW *against* LANGDON.

Where the declaration, in an action on the statute against evasive transfers of bank stock, alleged, that the defendant, an inhabitant of the town of *P.*, to defraud that town, and to prevent certain shares of bank stock owned by him, from being assessed therein, on a certain day, transferred to *H,* an inhabit-

ant of the town of *F*, 35 shares of the capital stock of one bank, 81 shares of the capital stock of another bank, and 16 shares of the capital stock of another bank; it was held, 1. that the declaration was not bad for duplicity; 2. nor because it did not embrace an offence within the statute.

By the phrase "ratable value," as used in that statute, is not meant the percentage at which the stock goes into the grand levy—*i. e.* six *per cent.* of its value—but the whole amount of the stock at its actual value.

THIS was an action of debt, brought to the superior court, by *Titus H. Darrow*, as treasurer of the town of *Plymouth*, against *Edward Langdon*, an inhabitant of that town, on the statute against transfers of bank stock with intent to evade the provisions of the tax law. There were three counts in the declaration.

In the second, the plaintiff alleged, that the defendant, previous to the first day of *October* 1847, and on or about the 25th day of *September* 1847, fraudulently and unlawfully transferred to *Simeon Hart*, of the town of *Farmington*, thirty-five shares of the capital stock of the *Hartford Bank*, of the value of 116 dollars, each; also eighty-one shares of the capital stock of the *Exchange Bank*, of the value of 56 dollars, each; and sixteen shares of the capital stock of the *Phoenix Bank*, of the value of 116 dollars, each; of all which shares of stock the defendant was then the owner; that said transfer was made with intent to evade the provisions of the act entitled "An act for the assessment of taxes," and to deceive and defraud the town of *Plymouth*, and to prevent said stock from being assessed therein; that the defendant then was, and ever since has been, a settled inhabitant of said town of *Plymouth*, and liable to be assessed as such; that said shares of stock were of banks in the city of *Hartford*, in this state; and that by reason of the fraudulent transfer so made by the defendant, no part of said stock was assessed in the town of *Plymouth* for the year 1847. The sum forfeited, being one *per cent.* of the ratable value of the stock so transferred, was averred to be 110 dollars.

The defendant demurred specially to the declaration, assigning for cause of demurrer, first, duplicity; and secondly, want of jurisdiction in the superior court.

The following statement of facts was agreed to by the parties, as belonging to the case. The defendant, on and before the 29th day of *September* 1847, was the owner, in his own right, of the shares of bank stock mentioned in the declara-

Litchfield,
July, 1850.

Darrow
v.
Langdon.

tion. The market value, at that time, of the shares of the *Phoenix Bank*, was 1856 dollars; of the *Exchange Bank*, 4180 dollars; and of the *Hartford Bank*, 4066 dollars. The defendant, on said 29th of *September*, in pursuance of an arrangement with *Simeon Hart*, of *Farmington*, transferred all of said shares to him, to be held by him in the following manner, *viz.* the stock of the *Hartford Bank*, as trustee of *Prudence E. Langdon*, wife of the defendant; the stock of the *Phoenix Bank*, as trustee of *Ellen M. Langdon*, a minor daughter of the defendant, described in the transfer as of *Farmington;* and the stock of the *Exchange Bank*, as trustee of *Edward Langdon*, (the defendant himself,) described in the transfer as of *Farmington.* These transfers were all made for the purpose of removing said bank stock from liability to taxation in *Plymouth*, for many years the place of the defendant's residence, and making it taxable in *Farmington*, the place of said *Hart's* residence. The taxes in *Farmington* had been, for two years preceding the transfer, considerably less than in *Plymouth.* The stock has ever since been assessed in *Farmington*, as trust property of said *Hart*, and regular taxes paid thereon in that town. All the dividends on said stock have been taken, from time to time, by the defendant, directly or indirectly; and the taxes on said stock have, in like manner, directly or indirectly, been paid by him.

It was also agreed, that the deposition of *Simeon Hart*, should be taken as part of the statement of facts in the case. This deponent stated substantially as follows: That *Edward Langdon*, of *Plymouth*, previous to *October* 1847, transferred to me sundry shares of bank stock in the *Phoenix, Hartford* and *Exchange Banks*, in the city of *Hartford.* I understood Mr. *Langdon* felt himself aggrieved, by the inequality of the taxation in *Plymouth*—that there were others whose property did not pay in proportion to what he had to pay. He said, he was willing to bear his share of all the burdens of taxation; but he thought they were multiplying the expenses of the town more than was necessary, in constructing new roads, and, he might have said, in other ways. This conversation was had, at the time of the transfer of the stock, or at the time he told me he was going to make the transfer. There was no other reason given for the transfers, as I recollect. I

have never drawn the dividends on the stock thus transferred; but I think I have given an order to Mr. *Langdon* for that purpose. I paid the taxes on the stock on the list of 1847. I paid the taxes; but Mr. *Langdon* has refunded the money, or furnished the money to pay the taxes with.

*Litchfield,*
July, 1850.

Darrow
*v.*
Langdon.

The questions of law arising on the demurrer and on the above statement of facts, were reserved for the advice of this court.

*Hooker* and *G. H. Hollister,* for the defendant, on the demurrer and statement of facts, contended, 1. That the declaration was bad for duplicity, as it alleges three distinct causes of action. The stock being in three different banks, the transfer must have been made, by three different *acts,* at three different *places,* at three different *times.* The *subject matters* must also have been different; and even the *parties* were different, as there were different *cestui que trusts. Bates* v. *Coe,* 10 *Conn. R.* 280. 292, 3. *Isham* v. *Morgan,* 9 *Conn. R.* 374. 378. *Cornell* v. *Todd,* 2 *Denio,* 130.

2. That the cause of action was not within the jurisdiction of the superior court; "one per cent. of the ratable value," making less than seventy dollars on the whole amount of the stock transferred. *Ratable* means the sum at which property goes into the grand levy. Thus, the ratable value of 10,000 dollars, is 600 dollars; one *per cent.* of which is 6 dollars. *Stat. p.* 606. § 19.—*p.* 607. § 22.—*p.* 605. § 18.— *p.* 602. § 4.—*p.* 610. § 35. See also *Stat.* ed. 1808. *p.* 426. § 1.—*p.* 518. § 2 —*p.* 357. § 3. *State* v. *Woodruff,* 2 *Day,* 504. *State* v. *Doane,* 2 *Root,* 451. *Brown* v. *Breed, Id.* 523.

3. That the facts in the case do not constitute the fraudulent transfer of stock intended by the statute; the object of the statute being to put a stop to the practice, then prevalent, of making transfers to *fictitious* persons, whereby the stock escaped from taxation. This was *fraudulent.* But there was no fraud in making the stock taxable in *Farmington* instead of *Plymouth.*

*Seymour* and *H. B. Graves,* for the plaintiff, contended, 1. That the declaration was not bad for duplicity. It sets up but one transfer of stock, and complains of but one violation

of the statute.    The act of transfer was indivisible.    It was done on the same day, for the same  object, and in pursuance of one arrangement.

2. That the cause of  action was within the jurisdiction of the court.    This appears, first, from the face of the declaration ; which alleges, that " the defendant has forfeited, for said offence, a sum equal to one *per cent.* of the ratable value of  said  stock,  amounting  to  110  dollars."    Secondly, from the import of the statute  expression, " ratable value ;" which means the  value at which the property is assessed, or is liable to be assessed, in the list.

3. That the object of the statute was, to  prevent the precise wrong attempted, by the defendant, in this case.    The heavy taxes in some of the cities and towns, drove the stock, under colourable  assignments, into the names of friends and relatives residing in  other  towns,  where  the  taxes  were lighter.    This was the mischief which the legislature intended to prevent.    The case before the court is within the  spirit and the letter of the statute.

HINMAN, J.    There is appended to the record in this case, a statement of facts, together with certain evidence agreed to be taken as part of the  statement, for the purpose, it is said, of having the court decide the question of law thereon.    It is also agreed, that the court may consider the question, in connexion with the questions presented by the demurrer ;  and at the close of the statement, it appears, that the question submitted is, whether  the  facts  stated  constitute  the  evasive transfer of stock intended by the statute, on which the action is founded.    This is irregular in  point of form ;  and the evidence agreed to, is of a character which  depends, for its effect, upon inferences which a jury might  draw from it ;  but which it is not usual for this court to do.    Under these circumstances, we shall only consider the  questions which are raised by the demurrer.

The  defendant demurs specially to the  declaration ;  and the first point made is, that the counts are all bad for duplicity ;   and, if not all, that the second and third counts are clearly liable to this objection.    We think the counts are substantially alike, in this respect ;  but will consider the question

as applicable to the second count ; it being conceded, that the others are unexceptionable, if that is good.

This count alleges, that the defendant, previous to the 1st day of *October* 1847, and, on or about, the 25th day of *September* 1847, fraudulently, wickedly, and unlawfully, transferred to *Simeon Hart*, of the town of *Farmington*, thirty-five shares of the capital stock of the *Hartford Bank*, of the value of 116 dollars each ; and also eighty-one shares of the capital stock of the *Exchange Bank*, of the value of 56 dollars each ; and also sixteen shares of the capital stock of the *Phoenix Bank*, of the value of 116 dollars each ; of all which said shares of stock, the defendant was the owner ; that said transfer was made with the intent to evade the provisions of an act entitled, " An act for the assessment of taxes," and to deceive and defraud the town of *Plymouth*, and prevent said stock from being assessed therein ; that the defendant then was, and ever since has been, a settled inhabitant of said town, and liable to be assessed as such ; and that said shares of stock were of banks in the city of *Hartford*, in this state.

There is no duplicity in the form of these allegations. The averment is, that the stocks of these several banks were all transferred, on the same day, to the same person, with the same design ; and all done by the defendant. The amount of stock in each of the three banks, is stated separately, and its separate value is given ; but this does not make the declaration double. It is very common in an action of trover or trespass for different articles, to give the value of each separately ; and if the word " also," should be inserted between each article, we presume no one would contend, that it would make a declaration in trespass double, if the taking was alleged to be at the same time.

But, it is claimed, that, as the stock was in three different banks, it necessarily required three separate acts to transfer it ; and although it is alleged to have been done at the same time, yet that it could not, in fact, have been so done ; and the averment, of necessity, amounts to an allegation of three separate and distinct causes of action.

It is obvious, that unless the court can see that it is impossible to make a transfer of stock in two or more banks at the same time, this objection must fail. But is there any such impossibility ? Is there a distinction in this respect between

bank stock and other kinds of property ?    We know of nothing in the nature of the property itself, which should create such a distinction.    We had supposed, that any number of choses in action might, like other property, be conveyed by one act.    Two or more notes or bonds may be assigned at the same time, without any difficulty ; and though it might be necessary to indorse them separately, that would hardly be claimed as making the transfers separate acts for every purpose.

The defendant supposes, that these different stocks can only be transferred, on the books of the several banks respectively ;  and that it would be necessary to go to each banking-house, in order to effect the transfer.    If he is right in this, we do not see, that it would necessarily make the three transfers separate acts, so far as the evasion of taxation is concerned.    There are many single acts, as the law views them, which are made up of a combination of separate acts, each distinct in itself, when considered alone.    This is always the case, where a man takes possession, and carries away a great variety of articles ; as in the case of an officer's attaching all the goods in a store.    If, then, the several transfers of this stock, were all made on the same day, pursuant to the same arrangement, by the same person, and to the same, and all with the same design, as is alleged in this declaration, we see no objection to treating them all, as one act, for the purposes of this suit.

But, whether the charters of these banks, or their by-laws, require the transfer of stock to be made only on their books, we do not know.    It is very probable that they do so ; but it has not been suggested, that their charters have been made public acts ; and, if they are not, we cannot notice them, on this demurrer.

2. It is claimed, that the forfeiture sued for, appears upon the declaration to be less than seventy dollars ; and, therefore, that the superior court has not jurisdiction of the cause. This depends upon the meaning of the words, " ratable value," as used in the statute on which the action is founded.    That statute provides, " that if any owner or owners of any share or shares of the capital stock of any bank in this state, shall transfer such share or shares to any other person or persons, with the intent of evading the provisions of the act to which

*Litchfield,*
July, 1850.

Darrow
*v.*
Langdon.

this is an addition, such owner or owners shall forfeit and pay to the treasurer of the town in which he, she or they reside, a sum equal to one *per cent.* of the *ratable value* of the share or shares of stock so transferred." Acts of 1843. *p.* 43. *Revised Stat.* 606. § 19.

The phrase " ratable value " as here used, is claimed to mean, the *per centage* at which the stock goes into the grand levy ; that is to say, six *per cent.* of its actual value ; and instances are referred to, where these or similar words, in our statutes, and other books, are supposed to have this meaning ; as, in the case of a former qualification for voting, where our old statute speaks of persons having a freehold estate rated at nine dollars. No doubt instances of this sort may be found ; and so, the word *rate* is frequently used, as synonymous with *tax*, and often, as the public valuation on which the tax is laid ; and what it means in a particular instance, must depend upon its connexion as applied to the subject matter. In this instance, to give the word ratable the meaning contended for, would make the statute an inducement to transfer stock, rather than the imposition of a penalty for attempting to avoid taxation. This could not have been the intention of the legislature. But the more obvious and natural meaning of the words, as they stand connected, without reference to any supposed intention of the legislature, we think, is, the actual value of the stock. The words are, " one *per cent.* of the ratable value of the share or shares of stock so transferred." How is a share of stock rated, if not at its actual value ? It is set in the list at six *per cent.* of its value ; but that value is ascertained, by an assessment or appraisal ; and this is the same thing as rating it ; and hence *ratable* value, is the appraised or assessed value.

We think, therefore, that the demurrer is not well taken ; and the superior court is advised to render judgment for the plaintiff.

In this opinion the other Judges concurred.

Judgment for plaintiff.