## GEORGE HAIGHT vs. DAVID K. HOYT.

Where a verdict is for excessive damages, and it clearly appears that the jury must have been governed by prejudice or partiality or by a grossly mistaken view of the case, it is the duty of the court to grant a new trial.

Where in an action for slander in the defendant's stating that the plaintiff burned his barns, the jury returned a verdict for $6,733.37, and on being

sent out by the judge for a reconsideration of the damages, returned another verdict for $4,000, and it appeared that the declarations were made by the defendant in the honest belief that they were true, that the fire was incendiary, and that the plaintiff had borne and expressed malice against the defendant, and that no one else upon full investigation was suspected, and that the plaintiff had sustained little injury from the declarations; it was held that a new trial should be granted on the ground of excessive damages.

The practice of jurors marking severally a sum for the damages in a case, and dividing the aggregate amount by twelve, and taking the result for the amount of the damages in their verdict, is a reprehensible one.

CIVIL ACTION for slander; brought to the Superior Court, and tried to the jury upon a general denial and a justification, before *Beardsley, J.* Verdict for the plaintiff for $4,000 damages, and appeal by the defendant on the ground of excessive damages. The case is fully stated in the opinion.

*W. F. Taylor* and *H. S. Sanford*, for the appellant.

*J. H. Olmstead* and *L. D. Brewster*, for the appellee.

PARK, C. J. The only question of importance in this case is, whether a new trial should be granted on the ground that the damages assessed by the jury are, in legal contemplation, excessive? The jury at first returned a verdict for the sum of $6,733.37, which the court refused to accept, and returned the jury to a further consideration of the case on the question of damages, telling them that in the opinion of the court their verdict was too large.

They afterwards returned a verdict for the sum of $4,000, which was accepted by the court, and the verdict recorded.

The first verdict clearly shows that the jury arrived at the amount of the damages by first agreeing among themselves to abide by the result which should be obtained by dividing the total amount of the damages that the several jurors should privately mark upon paper, by the number twelve. This was done, and an amount was obtained, which could not have expressed the honest judgment of any juror on the panel, for no juror would have consented to a

verdict in a case like this, that had in its amount thirty-three dollars and thirty-seven cents, unless forced by some consideration outside of the case itself. This mode of arriving at a verdict is reprehensible, to say the least, for it is hardly possible that an honest result could thus be obtained. Some jurors would mark a much larger sum than their candid judgment would dictate in order to make up the expected deficiency of others, and so the honest jurors would be deceived and a dishonest verdict obtained. And it is apparent that many of the jurors must have marked the damages at quite or nearly the sum of $10,000, the amount claimed in the *ad damnum* clause of the plaintiff's complaint, for the mean amount would not otherwise have been obtained. Such jurors must have been governed by some grossly mistaken view of the case, or by prejudice or partiality, and although the court returned them to another consideration of the matter, still it must be presumed they carried with them into such consideration the same prejudice or partiality or mistaken view of the case which they had previously entertained; for the court said nothing to influence them further than that " their verdict was too large in the opinion of the court." Prejudice or partiality when once formed is exceedingly difficult to be removed. It controls its possessor, and causes him to take and advocate the most extravagant views of a case; and wherever this baneful influence clearly exists, and causes gross injustice in the assessment of damages, the court should not hesitate to give redress by setting aside the verdict. In the case of *Woodruff* v. *Richardson*, 20 Conn., 238, this court said that " if the disproportion between the injury and the damages be so great as to indicate passion, prejudice or corruption of the jury; if by mistake or otherwise the jury have been misled by irrelevant matter, or have disregarded or misapprehended some rule of law, and thus have made an extravagant assessment of damages; in such cases, as well as others which may well be conceived, it would be the duty of the court to put its hand upon the injustice." Many other cases might be cited where the

same rule has been laid down, but it is unnecessary to refer to them, for the books are full of them.

It clearly appears in the case that the verdict of the jury was largely made up of exemplary damages. The real damage which the plaintiff sustained in consequence of the words spoken by the defendant must have been · small. They were uttered to the friends and neighbors of the plaintiff, who knew well his character, and who likewise knew the suspicious circumstances on which the defendant founded his belief that the plaintiff had burned his barns. If those circumstances were insufficient to create such belief, those friends and neighbors knew it, and would give no credence to the defendant's declarations. Indeed, the plaintiff himself said that they had caused him no damage —that he had more friends than he had before the charges were made. This was said when told that he could recover damages of the defendant if he did not burn the barns. Such is the plaintiff's own estimate of the actual damage he had sustained, and it obviously appears that his estimate was correct.

Is the case one for exemplary damages? If it is, it must be conceded that the damages are excessively large in view of all the facts presented by the record. Malice is a principal ingredient in the action of slander, and damages to a great extent depend upon its existence in fact. The difference is great between a case where slander *per se* is fabricated, and its utterance persisted in for the malicious purpose of injuring another, and a case where the words are spoken under circumstances sufficient to create the belief that all that is said is true. The defendant in one case would be a fit subject for the infliction of exemplary damages, while in the other he should be required to make compensation for, and only for, the injury, mental and otherwise, the plaintiff may have sustained. The jury clearly disregarded these distinctions and considerations in the case at bar. They made no distinction between slander fabricated and uttered maliciously, and slander prompted by an honest belief that what was said was true. Herein lies the

wrong of this case. We think the facts and circumstances stated in the case were sufficient to create in the mind of the defendant a belief that the plaintiff had burned his barns, and to show that the declarations he made to that effect were prompted by such belief. We do not propose minutely to examine the evidence, and shall specify only some of its principal points.

It clearly appears that the fire which destroyed the defendant's barns was set by an incendiary, and the gratification of malice must have been the motive. The evidence indicates such malice on the part of the plaintiff. It appears that he was not on speaking terms with the defendant. He sought to deprive him of what customers he had, and to prevent him from getting new ones. He expressed joy on one occasion that the defendant's hay had got wet, and wished that the quantity was much greater. He said to several persons that if he knew who set the fire to the defendant's barns he would not tell. The plaintiff's wife congratulated him the morning after the fire that he was at home the night before. She knew the feelings he entertained, and feared he would be suspected in consequence. These are some of the principal facts tending to prove the enmity of the plaintiff towards the defendant, and they indicate deep-seated malice—a desire for revenge—a disposition to injure the defendant in his person and property. It does not appear that any other person in all that region entertained a similar hostility to the defendant. The burning of the barns created great excitement in the community and in the church. Detectives were employed and several investigations were had, but still suspicion fell upon no one but the plaintiff. But this is not all. The plaintiff intimated to several persons before the fire, that the defendant's business might not prosper—might not continue three months—that his barns might be burned. These intimations were very significant, and it further appears by the evidence that on a certain occasion immediately after the fire one Seymour said to the plaintiff in a pleasant manner, "What did you burn those barns for?" The witness then

states that "he straightened up and his face was as red as a man's could be; that he could not speak a word, but stammered as though he wanted to say something, but could not say anything."

These are some of the principal facts stated in the evidence tending to show that, when the defendant made the declarations charged, he honestly believed that the plaintiff burned his barns, and that consequently the declarations were not made in malice. We think, therefore, that the jury did not comprehend the true rule that should govern them in the assessment of the damages, and that consequently there should be a new trial.

In this opinion the other judges concurred.