SHERYL CARCHIDI *v.* DORIS M. RODENHISER,
EXECUTRIX (ESTATE OF WALTER PARKINS)
(13433)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued November 8, 1988—decision released January 3, 1989

*Roger J. Frechette,* with whom was *Matthew E. Frechette,* for the appellant (defendant).

*Eugene K. Swain,* with whom were *Humbert J. Polito* and, on the brief, *Kerin M. Woods,* for the appellee (plaintiff).

SHEA, J. The dispositive issue in this case is whether, during closing argument, counsel may state to the jury his belief as to the pecuniary value of the plaintiff's personal injury claim. We conclude that counsel may not, because this practice improperly influences the jury in

arriving at a verdict. Accordingly, the judgment for the plaintiff in this personal injury case is set aside and the case is remanded to the trial court for a new trial.

The plaintiff, Sheryl Carchidi, brought this negligence action against the defendant, Doris M. Rodenhiser, executrix of the estate of Walter Parkins, for injuries sustained in an automobile accident. The plaintiff testified that as a result of the accident, she sustained injuries to her neck and left arm that necessitated medical treatment, that the pain and stiffness in her neck and left arm had persisted until the time of trial, and that she was unable to work for a total of forty-six days. Prior to closing arguments, counsel for the plaintiff disclosed to the trial court his intention to argue to the jury a specific amount of money, $30,000, that the jury should return as a verdict. The defendant objected to this request. The trial court ruled that the plaintiff's counsel would be permitted in closing argument to suggest specific monetary amounts to the jury, but that these suggestions could not be in combination with any mathematical formulae. The defendant took an exception to this ruling.

In closing argument, counsel for the plaintiff suggested to the jury that the plaintiff was entitled to an award of $25,000 for pain and suffering, and that, when this amount was combined with the other elements of damages, the plaintiff was entitled to a total award of $30,000.[1] Counsel for the plaintiff also invited the

---

[1] In closing argument, counsel for the plaintiff stated: "Now, because the injury she had is permanent, the judge in his charge will tell you that she's entitled to be compensated over the rest of her life for the injuries that she had. I'm going to suggest to you that when you're contemplating compensating her for the injuries that she's going to have for the rest of her life over the next fifty years, that a figure that might be appropriate, the dollar amount that might be appropriate for the next fifty years is an amount of twenty-five thousand dollars, to compensate her from today's date, ten years hence, twenty years, thirty years, thirty-five, forty and fifty years, I suggested an amount of twenty-five thousand dollars, for that intan-

defendant to suggest an alternative sum, if the defendant believed that the plaintiff's suggestion was not appropriate. Counsel for the defendant declined to suggest an alternative sum.[2] In rebuttal, counsel for the plaintiff reiterated that he believed that $30,000 was an "appropriate amount" for a verdict, and he noted that counsel for the defendant had not told the jury "what he felt was a fair amount."[3] In its charge, the trial court instructed the jury that the figures suggested by the plaintiff's counsel were not evidence in the case,

gible element of damage would be appropriate. Now, there are also tangible elements of damage that you should consider and the judge will tell you about. They are the doctor's bills that are in evidence. . . . I think if you multiply that out that will come to just a little bit over two thousand dollars, two thousand two hundred dollars, which is also an element of damage. Now, she is also entitled to be compensated for the problems that she had from November of 1985 up until today's date, that is, both the pain of the two weeks after the accident or after the collision and then the problem that drove her to see Dr. Langoni and so on and so forth and the intermittent problems up until January, 1988. When you put them all together, I think that an area of money that would be appropriate in this particular case is in the thirty thousand dollar range and that's what I'm going to ask you ladies and gentlemen to return to Mrs. Carchidi. Now, it will be . . . when Mr. Frechette has his turn to argue, I'm going to be looking forward to it just as much as you are, to see what he has to say. I would ask that if he doesn't think the amount I suggested to you is appropriate, then perhaps he can share with you what he thinks would be an appropriate amount, if he chooses to do so, instead of just saying that my suggestion isn't the right amount."

[2] Counsel for the defendant stated: "I believe, in concluding, that it's improper for me to tell you what I think the case is worth. I'm only going to comment on the evidence and I've told you what the evidence is."

[3] In rebuttal, counsel for the plaintiff stated: "Now, I suggested to you that the amount of damages be in the neighborhood of thirty thousand dollars. I think that that is an appropriate amount. Mr. Frechette didn't care to tell you what he felt was a fair amount. I ask you when you consider the damages over the next fifty years, that the evidence says that she will be facing these injuries, that when you arrive at a figure, if it's around the figure that I've suggested to you, that you do not cut it in half and say, well, this is enough, fifteen thousand might be enough or twenty thousand might be enough, with the idea that she is going to get a half a cup of justice, if you will."

and that it was for the jury alone to determine the proper amount of damages, based upon the evidence presented.[4]

The jury returned a verdict in favor of the plaintiff in the amount of $30,000. Thereafter, the defendant moved to set aside the verdict, on the ground that the court had erred in permitting counsel for the plaintiff to argue to the jury the appropriateness of a specific monetary sum for an award of damages.[5] The trial court denied the motion. This appeal followed.

On appeal, the defendant claims that the trial court erred in (1) permitting the plaintiff's attorney to argue the amount of damages sought by the plaintiff for her personal injuries, and (2) refusing to set aside the verdict because of that claimed error. Because these two claims of error involve the same legal issue, we need address only the first claim. We find error.

The plaintiff points out that our holding in *Levin* v. *Ritson,* 179 Conn. 223, 425 A.2d 1279 (1979), expressly authorizes counsel, with the permission of the court, to argue the value of a case, and, the trial court having granted such permission, therefore, claims that her

---

[4] The trial court instructed the jury on this issue as follows: "An additional element for which the plaintiff is entitled to be compensated for is the pain and suffering that she has suffered and that she will continue to suffer as a proximate result of the negligence of the defendant. Obviously, this is a difficult item to determine because how does one measure pain and suffering in terms of dollars and cents. All the court can say to you is, you should use your own good common sense and judgment in awarding money damages for any pain and suffering that you find that the plaintiff experienced and will experience as a proximate result of negligence on the defendant. Any figure[s] suggested by counsel are just that, suggestions. They are not evidence in the case and the burden of determining the appropriate amount of damages is for you and you alone to determine, based on the evidence that you have heard."

[5] In its motion, the defendant set forth several grounds for setting aside the verdict. The only ground that the defendant pursues on appeal, however, pertains to the plaintiff's statement in closing argument as to the amount of money that the jury should return in its verdict.

counsel properly argued how much she should receive in damages. In *Levin* v. *Ritson,* supra, 227, we stated: "If the circumstances are such that mention of an estimated value of a case does not create prejudice in the minds of a jury, the trial court, in its discretion, may allow such argument so long as the jury [is] instructed that counsel's estimate is not evidence and that the jury's duty is to decide the issues solely on the evidence presented. On the other hand, if the circumstances are such that mention of an expected verdict is either unfounded or based on wholly speculative factors such as those found in many mathematical formulas, or if it is a deliberate attempt by counsel to create prejudice in the minds of the jury, it would not be error for the trial court to direct that such argument not be made or to remove it from the jury's consideration." Thus, the determination as to whether such an argument would be permitted was left within the discretion of the trial court.

We now conclude, however, that because of the risk of improper influence upon a jury, counsel may no longer argue to a jury the amount of damages claimed to be recoverable by a client in a personal injury action. Accordingly, we overrule *Levin* to the extent that it leaves the decision to the discretion of the trial court, thus inviting variant rulings in the trial court under similar circumstances. Our conclusion that *Levin* must be overruled is consistent with the policy of promoting fair and uniform procedures and with the history of the related procedure of submitting the ad damnum clause of the complaint to the jury.

The practice in this state had long been to submit all of the pleadings and the exhibits introduced at trial to the jury for their consideration in reaching a verdict. *Gimelli* v. *Waterbury Cadillac Co.,* 109 Conn. 722, 726, 145 A. 563 (1929). As part of the pleadings, the jury was permitted to view the ad damnum clause of the

complaint, in which the plaintiff stated the relief to which he believed himself entitled. See General Statutes (1958 Rev.) § 52-91; Practice Book (1963) § 85. Without such a prayer for relief, a demurrer to the plaintiff's complaint could properly be sustained on the ground that the complaint did not state a cause of action. *Chapin* v. *Chapin,* 155 Conn. 691, 692, 229 A.2d 548 (1967). This court early recognized, however, that submission of the ad damnum clause to the jury brought with it the danger that the jury, in reaching a verdict, would be influenced by the amount claimed by the plaintiff. In *Haight* v. *Hoyt,* 50 Conn. 583, 585 (1883), for example, we set aside a judgment that we concluded was the result of a quotient verdict. We commented that "it [was] apparent that many of the jurors must have marked the damages at quite or nearly the sum of $10,000, the amount claimed in the ad damnum clause of the plaintiff's complaint, for the mean amount would not otherwise have been obtained. Such jurors must have been governed by some grossly mistaken view of the case, or by prejudice or partiality . . . ." Id.

The practice of submitting the ad damnum clause to the jury continued despite the inherent prejudice that it caused. To offset the prejudice, however, trial judges customarily reminded the jury that the amount claimed in the ad damnum clause was not evidence in the case, but rather, represented the ceiling on the plaintiff's recovery. See D. Wright, Connecticut Jury Instructions (2d Ed. 1970) § 597. In *Cooley* v. *Crispino,* 21 Conn. Sup. 150, 147 A.2d 497 (1958), however, former Chief Justice Cotter, while a trial judge, criticized severely the practice of submitting the ad damnum clause to the jury under any circumstances. In that case, upon the defendant's motion, he had refused to allow the amount of the ad damnum clause to go to the jury. Thereafter, the plaintiff prevailed on the issue of liability, but

claimed that the damages awarded were inadequate. In his motion to set aside the verdict, the plaintiff complained that the court's refusal to submit the ad damnum clause to the jury lowered the amount of the verdict which would otherwise have been given. Judge Cotter denied the motion, stating that "[t]he ad damnum clause has no probative value" and that "[t]he verdict must be supported by the evidence—not upon the claims of counsel." Id., 152. He quoted the statement in *Botta* v. *Brunner,* 26 N.J. 82, 104, 138 A.2d 713 (1958),[6] that "[i]t is a matter of common knowledge that ordinarily the amount of damages laid in the complaint is much in excess of any sum which the plaintiff hopes to receive." He concluded that "[t]o inform the jury of the amount sued for serves no useful purpose." *Cooley* v. *Crispino,* supra.

The concern expressed in *Cooley* over the effect of submitting the ad damnum clause to the jury led eventually to the adoption of Practice Book § 313,[7] which provides in part that "[i]n any action seeking damages for injury to the person, the amount demanded in the complaint shall not be disclosed to the jury." This rule, read in conjunction wih Practice Book § 310,[8] which provided in part that "[t]he complaint, counterclaim and cross complaint, and responsive pleadings thereto, shall

---

[6] We note that the holding in *Botta* v. *Brunner,* 26 N.J. 82, 138 A.2d 713 (1958), has been modified by a New Jersey rule of practice. "Rule 1:7-1 (b) permits counsel to argue to the trier of fact the appropriateness of employing a time-unit calculation technique for fixing any element of unliquidated damages. However, this rule continues to prohibit any suggestion by counsel of specific monetary amounts either on a lump sum or time-unit basis." *Friedman* v. *C & S Car Service,* 108 N.J. 72, 77 n.3, 527 A.2d 871 (1987).

[7] This Practice Book provision was adopted in June, 1973, as § 247A. We note that pursuant to General Statutes § 52-91, a plaintiff may no longer state in his complaint the specific amount of damages being sought from a defendant. He is required to specify whether the amount in demand exceeds or is less than $15,000 or $2500.

[8] Practice Book § 310 was repealed as of December 15, 1987. This change has no effect on the policy underlying Practice Book § 313.

be given to the jury at the commencement of their deliberations," indicates a policy of keeping from the jury a plaintiff's claim as to the value of his pain and suffering. Despite this policy, however, counsel were nonetheless permitted to argue *in summation* the monetary value of a case, subject to the discretion of the trial court. Thus, if the trial court gave permission as well as a suitable cautionary instruction; see *Levin* v. *Riston,* supra; a plaintiff could circumvent the policy expressed in Practice Book § 313 of keeping the amount claimed as damages in a personal injury case from the jury. Further, because this determination was left to the discretion of the trial court, variant rulings have resulted. In personal injury cases where recovery for such intangible elements of damages as pain and related disability is almost invariably sought, it is difficult to find any reasonable basis for permitting such argument in one case and prohibiting it in another. Our conclusion that counsel may no longer argue the value of pain and suffering, therefore, repairs these inconsistencies in our trial procedures, by uniformly precluding a party from doing orally that which § 313 provides he may not do in writing.

The plaintiff claims that a pleading setting forth an amount demanded is different from a suggestion of the value of a case made by counsel in closing argument, and that the possibility of prejudice is much less likely where the suggestion is made in argument, rather than in writing. We conclude, however, that the plaintiff's distinctions are without substance. Stating the amount claimed, whether in summation or in the pleadings, has the effect of instilling, at least as a starting point, a specific monetary figure in the minds of the jurors. Because counsel are aware of this effect, either practice encourages exorbitant demands by counsel. Further, we are not convinced that monetary figures suggested by counsel in the drama of closing argument

are necessarily less influential or prejudicial than a written demand contained in the plaintiff's complaint. See R. Cartwright, "Winning Psychological Principles in Summation," 16 Trial Law. Q. 4 (Summ. 1984).

The plaintiff maintains that the practice of arguing the value of pain and suffering should be permitted because translating such elements of recovery in a personal injury case into dollars is the same task the jury must perform in arriving at a verdict. We reject this contention for two reasons. First, when a jury arrives at an award of damages, if any, they do so as the neutral and impartial triers of fact. Suggestions by a plaintiff's counsel, on the other hand, are statements made in the course of the zealous representation of a client's cause, and therefore, are completely self-serving. Second, the fact that the jury is allowed to perform a particular function does not necessarily mean that counsel also should be permitted to do so. For example, the question of the credibility of witnesses is for the trier of fact to decide. Our rules of professional conduct, however, expressly prohibit an attorney from stating "a personal opinion as to . . . the credibility of a witness . . . ." Rules of Professional Conduct 3.4.

We recognize that our holding places this state with a small minority of states that prohibit counsel from commenting on the value of pain and suffering. See annot., 14 A.L.R.3d 541. We believe, however, that this is the better rule, because it establishes a uniform policy that is consistent with Practice Book § 313, and it prevents counsel from circumventing that rule of practice and thereby interfering with the "monetary evaluations of the immeasurable perturbations of the spirit." L. Jaffe, "Damages for Personal Injury: The Impact of Insurance," 18 Law & Contemp. Prob. 219, 222 (1953).

The measure of damages in this state for pain and suffering has long been " 'fair, reasonable and just com-

pensation.' " *Levin* v. *Ritson,* supra, 227. This standard is employed because of the "universal acknowledgement that a more specific or definitive one is impossible." *Botta* v. *Brunner,* supra, 92. Indeed, certain terms, of whose meaning jurors already have some notion, are best left unexplained because almost all attempted explanations and valuations create more problems than they solve. See G. Christie, "Vagueness and Legal Language," 48 Minn. L. Rev. 885, 901 (1964). As the court stated in *Braddock* v. *Seaboard Air Line Railroad Co.,* 80 So. 2d 662, 668 (Fla. 1955): "Jurors know the nature of pain, embarrassment and inconvenience, and they also know the nature of money. Their problem of equating the two to afford reasonable and just compensation calls for a high order of human judgment, and the law has provided no better yardstick for their guidance than their enlightened conscience. Their problem is not one of mathematical calculation but involves an exercise of their sound judgment of what is fair and right."

We conclude, therefore, that the practice of mentioning the sum to be awarded to the plaintiff for pain and suffering constitutes an unwarranted intrusion into the domain of the jurors. Even with a cautionary instruction that such a sum represents only the argument of counsel, "it is extremely doubtful whether such admonitions are sufficient to eliminate the figure from their minds as a conscious or unconscious factor in reaching their verdict." *Botta* v. *Brunner,* supra, 104. The fact that a cautionary instruction is generally recognized as necessary when such an argument has been made to a jury is an implicit recognition of its prejudicial effect.

There is error, the judgment is set aside and the case is remanded to the trial court for a new trial.

In this opinion the other justices concurred.