[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR ADDITUR AND MOTION TO SET ASIDE VERDICT AND FOR RETRIAL ON DAMAGES
This automobile negligence case was tried to the jury and a general verdict for $150,000.00 was rendered for the plaintiff passenger Wayne Bleau against the defendant driver Kimberly Ward. A defendant's verdict was rendered for the defendant automobile owner Richard DeForest. No party requested submission of interrogatories and none were submitted to the jury.
The plaintiff has now filed a motion for additur and a separate motion to set aside the verdict and for a retrial on the issue of damages.[1] He contends that the court erred in 1) instructions on the family car doctrine; 2) refusing to permit the plaintiff to argue dollars to the jury in summation either by flat amount or formula; 3) refusing to permit certain voir dire questions. He also contends inadequacy of the $150,000.00 CT Page 4289 verdict presents additional grounds.
Both motions are denied because the court finds that the verdict is untainted and does not fall outside reasonable compensation limits; a finding by the jury that the defendant driver habitually or specifically in this case asked permission to borrow the vehicle would prevent imputation of negligence to the owner under the common law family car doctrine; under particular circumstances of this case, fundamental fairness precluded permitting plaintiff's counsel to argue dollars to the jury where the defendants contested any legal obligation to pay damages to the plaintiff at all; the plaintiff was accorded fair opportunity to voir dire.
 I
Turning first to the motion for additur, the verdict rendered here was in the amount of $150,000.00. The claim is that in light of the evidence that sum is inadequate to reimburse the plaintiff for what should be fair, just and reasonable damages in this case.
Whenever a court is confronted with a verdict that is inadequate, it may set it aside and order an additur and compel a trial conditioned upon failure to comply with its order. Barbieri v. Taylor, 37 Conn. Sup. 1, 7 (1980); Connecticut General Statutes 52-216a, 52-228b. If the court determines an additur is appropriate, it must make fair appraisal of just damages which should be awarded, Brower v. Perkins, 135 Conn. 675,682 (1949). That fair appraisal however must be made without invading the province of the jury. Wochek v. Foley,193 Conn. 582, 588 (1984). If a verdict does not fall outside the limits of reasonable compensation, it is improper for a court to order additur. Fox v. Mason, 189 Conn. 484, 489-90 (1983).
The evidence offered by the plaintiff indicated that Mr. Bleau incurred bills for physicians, surgeons, hospitalization and other medical expenses in the amount of $14,850.75. There was also evidence that the plaintiff would require future surgery, the cost of which would run between $10,000 and $13,000 for hospital bills and surgeon's fees. Mr. Bleau has sustained an injury to his right ankle consisting of a compound fracture and dislocation of the right ankle resulting in traumatic arthritis; four dislocated toes; and multiple lacerations of the face, arms and legs which he claims resulted in scarring.
He sought monetary compensation, for this injury, his medical bills, claims of reduction in ability to pursue and enjoy life's activities, emotional distress, intense pain and suffering and a partial permanent disability of the ankle. CT Page 4290
Certain evidence before the jury is pertinent. Although Mr. Bleau had received substantial permanent partial disability ratings from two different physicians, the jury could have found that he nonetheless held down two different jobs one as a landscaper and the other as a cook which require physical work and also physically assisted a disabled spouse each day.
Although there was a claim for permanent scarring caused by lacerations suffered in the collision and remedial surgery, the jury could have found plaintiff by his own testimony minimized effects of this scarring on his life. Mr. Bleau never showed the jury the scars on the lower leg and foot.
It is also possible that the jury did not credit the evidence of the need for future surgery or find that it would be more likely than not that the plaintiff would elect to undergo that surgery. In any event, whether it did or didn't, the court finds nothing in the amount awarded which the shocks the conscience in terms of the amount of the jury's verdict. It is the function of the jury to award fair, just and reasonable damages against any defendant which the jury has found liable to the plaintiff. Juries are given wide latitude in determining what are fair, just and reasonable damages. The court has no evidence before it of prejudice, partiality mistake or corruption in the jury's verdict. If the jury decided it was not more likely than not that future surgery would be undergone, then there were out of pocket special damages of approximately $14,000.00 and the sum of $136,000.00 awarded for general damages. The length of the time that passed between the injury and the date of trial and the fact that the plaintiff consulted with the surgeon only shortly before the trial after a long hiatus of several years where no medical treatment was obtained cannot be ignored because the jury was entitled to consider those circumstances. Even if the outside limit for future surgery is included, it means that the panel awarded approximately $123,000.00 to the plaintiff for general noneconomic damages including his pain and suffering and emotional distress.
The plaintiff urges that an additur of some $600,000.00 be made.
The evidence of the plaintiff's pain, suffering and distress caused by the severity of the injury and the necessary medical means of dealing with it by use of steel pins, screws and braces which had to be implanted in and around Mr. Bleau's smashed bones and then removed with pliers after they had served their purpose was effectively and vividly presented during the trial. To this court, despite Mr. Bleau's stoic demeanor, it CT Page 4291 was clear that the plaintiff suffered emotional distress from his injuries and that he suffered pain. The jury attentively listened to the evidence and exercised its judgment about what were fair just and reasonable damages. However, the plaintiff's motions do not turn on whether the court might have as fact finder awarded some larger sum, but on whether the jury verdict was within acceptable bounds.
The court does not agree that the verdict should be disturbed and believes that the jury was within acceptable verdict bounds in its award to the plaintiff.
The motion for additur is denied.
 II
The court will next address the motion to set aside the verdict. Claimed grounds of inadequacy of verdict have already been discussed in reference to the motion for additur and no not be repeated, except to reiterate that the court finds no grounds to set aside the verdict based on inadequacy.[2]
 III
In determining a motion to set aside a verdict, the evidence must be given the most favorable construction to support the verdict of which it is reasonable capable. Kerrigan v. Detroit Steel Corporation, 146 Conn. 658, 660 (1954); Petrillo v. Bess, 149 Conn. 166, 167 (1961).
The plaintiff claims that the court erred in its instruction on the family car doctrine when it instructed the panel that "if you find that the defendant Ward had specifically asked permission to use the car on the night in question or was in the habit of specifically asking permission to use the vehicle when she decided to, then she would not be using the vehicle under a general authority to drive and the plaintiff would have failed to sustain his burden of proof on this necessary element and your verdict under those circumstances must be for the defendant Richard DeForest."[3]
The court believes that this is a correct statement of our law under the holding of O'Keefe v. Fitzgerald, 106 Conn. 294
298 (1927). In O'Keefe v. Fitzgerald 106 Conn. at 299 the Supreme Court remarked under very similar facts ". . . [I]t appears that she did not venture to take the car without permission, in fact she approached the owner twice upon the matter. If she had general authority to use it, and . . . [the owner] was maintaining it for her use as well as for his own, and that of other members of his family, the seeking of permission to drive the car on CT Page 4292 this occasion would manifestly have been unnecessary." The court concluded the owner was a "gratuitous bailee" not the agent of the owner under the family car doctrine,
Some background is in order here. The jury could have found the following facts. The defendant Kimberly Ward was the step-daughter of Richard DeForest. She had never been legally adopted by Mr. DeForest. There was testimony from the defendant De Forest that the defendant Ward always asked his permission to use a certain station wagon and that on the night in question she specifically asked permission to use it to go dancing at a night club with friends.
There is a statutory family car doctrine which raises a presumption where the operator of a motor vehicle is within certain degrees of kinship of an owner of it that the car was being operated as a family car and under a general grant of authority. See 52-182 Conn. Gen. Stats. That particular doctrine had no applicability here because as the step-daughter of Mr. DeForest she did not come within the purview of 52-182, of the General Statutes providing for application of statutory family car doctrine, because stepchildren are not listed among those family members covered by the statute.
The distinction between the two doctrines is that the statutory doctrine set out in 52-182 of the General Statutes raises a presumption that one vehicle was being operated as a family car which it is the defendant's duty to rebut. No such presumption is raised under the common law doctrine but it includes within the doctrine all members of the owner's household without regard to ties of blood or consanguinity and leaves the burden of proof to the plaintiff. It was the plaintiff's burden to prove the family car doctrine's elements.
The jury could have found from the evidence that Kimberly Ward always asked permission to use the family car and/or that she did so on the night the plaintiff was a passenger in it and suffered injuries in the accident. The court believes its charge fairly presented the issue to the jury in light of the evidence and the holding in the O'Keefe case.
The plaintiff also claims that the court should have adopted its Charge Request and defined general authority. The court believes that its charge was sufficient to guide the jury. Terms like general which are used in their ordinary meaning, need not be further defined in a charge. Magnon v. Glickman,185 Conn. 234.
IV CT Page 4293
The plaintiff also contends the verdict should be set aside because he was precluded prior to his attorney's final argument from suggesting a desired verdict lump sum or formula for reaching it, as Public Act 89-319 authorizes.[4]
That issue involves the trial judge's duty to insure that a fair trial occurs. The trial judge has a large discretion in what content of summation remarks will be permitted in a particular case. Lebas v. Patriotic Assurance Company106 Conn. 119, 122 (1927). It will not be reviewed by an appellate court without strong reason. Ibid.
There are occasions when there is no possibility that any instruction will be curative Yeske v. Avon Old Farms School, Inc., 1 Conn. App. 195, 204 (1984); Carchidi v. Rodenhiser,209 Conn. 526 (1980). If remarks by an attorney are prejudicial, the ability of a party to obtain a fair trial is hampered and a new trial is mandated. Id. "It is singularly the trial court's function to assess when such injury has been done, since it is only that court which can appraise the atmosphere prevailing in the courtroom." Id. at 205. A corollary of that rule is that the trial judge should prevent prejudicial remarks being made as a part of his constitutional duty to insure a fair trial.
The trial judge is a minister of justice and has a higher obligation than the advocates to see that justice is done. Miller v. Drovin, 183 Conn. 189 (1984). As such the trial judge must be empowered with a reasonable discretion to see that justice is done. McWilliams v. American Fidelity Co., 140 Conn. 572,580 (1954). Due process of law requires that a trial be before an impartial judge and an unprejudiced jury.
The court granted defendants' motion to preclude such final argument because the court found it would be unfair under the particular facts and circumstance of this case to permit a suggestion by the plaintiff's lawyer, of either a total amount desired in the jury's verdict, or a formula by which, what has sometimes been called non-economic damages would be determined, where the liability of the defendants has been contested. Any party permitted to suggest either such a lump sum or the formula to be used would logically only do so in the hope that the jury might be favorably influenced to that party's cause by means of the suggestion. Otherwise, there would be no point in making such a suggestion. The court found it fundamentally unfair under the facts and circumstances of this case, where the defendants did not admit liability, to force them to the choice of making no alternative suggestion as to any dollar amount or formula to influence the jury's verdict, or making a suggestion of a sum when the theory on which the case had been tried by the defendants was that the jury should find a defendants' verdict CT Page 4294 and award nothing.
In recent cases of Carchidi v. Rodenhiser, 209 Conn. 526
(1988) and Poole v. Bell, 209 Conn. 536 (1988), the Connecticut Supreme Court held it impermissible for counsel to argue the jury value or mathematical formulae for determining monetary value of damages in civil actions. Some excerpts from those decisions deserve particular mention. In Carchidi the court states that "The plaintiff points out that our holding in Levin v. Ritson, 179 Conn. 223, (1979) expressly authorizes counsel, with the permission of the court, to argue the value of a case. . . ." Carchidi, 209 Conn. at 529. However, the court concludes, "because of the risk of improper influence upon a jury, counsel may no longer argue to a jury the amount of damages claimed to be recoverable by a client in a personal injury action." Id. 530. (Emphasis supplied). That risk is not any way lessened by passage of a statute permitting what the case law prohibited.
Carchidi goes on to recite the history of the removal of the Ad Damnum Clause where a plaintiff sets out the dollar amount being claimed in a complaint, and the adoption of a practice rule amendment which would insure that the Ad Damnum would not go to the jury. See P.B. 313. The court indicates in its decision, that its holding places this state within a small minority of states that prohibit counsel from commenting on the value of pain and suffering. It holds that this is a better rule because it establishes a uniform policy consistent with Practice Book 313. The Carchidi decision indicates that "[e]ven with a cautionary instruction [to the jury], that such a sum represents only the argument of counsel, it is extremely doubtful whether such admonitions are sufficient to eliminate the figure from [the jurors] minds as a conscious or unconscious factor in reaching their verdict." The unfairness is not lessened by passage of a statute permitting the kind of argument the case law found prejudicial and requiring a curative instruction the Supreme Court deemed ineffective. "The fact that a cautionary instruction is generally recognized as necessary when such an argument has been made to a jury is an implicit recognition of its prejudicial effect." Id. at 535. (citations omitted)
In Poole v. Bell, which dealt with the mathematical formula utilized where a plaintiff's counsel argued dollars to the jury, the Supreme Court ruled there, that this was also impermissible because as the court stated in Carchidi, it has the effect of instilling at least as a starting point, a specific monetary figure in the mind of the jurors. It indicated at 209 Conn. 539
that it necessarily follows that counsel may not indicate the monetary components used to arrive at the sum suggested for such CT Page 4295 elements of damages, and indicated that whether it was a lump sum being argued or a formula, that they were equally impermissible.
The passage of a statute, by the legislature permitting either practice cannot change the fact that under the circumstances of this particular case, its allowance would have been fundamentally unfair, and that it cannot be cured by a court's instructions. This is particularly pertinent because both the federal and state constitutions contain clauses guaranteeing the citizens of the state due process of law: United States Constitution Fourteenth Amendment, Section 1; Connecticut Constitution, Article 1st, Section 10. Our Supreme Court has found that these clauses have the same meaning and impose the same limitations. The essence of that meaning is that fundamental fairness must be assured to any and all parties in trial of a case.
We once had in this state a situation where the General Court or General Assembly exercised Judicial power. Our own Supreme Court has recognized that the Constitution of 1818 removed from the General Assembly all judicial power. The court has determined, for example, that it is the Judicial Branch of government that has the inherent power to determine the qualifications necessary for the practice of law; Heiberger v. Clark, 148 Conn. 177 and to discipline and regulate the conduct of attorneys who are officers of its court. Arguments of counsel lie within the control of the court, under the rules of practice, Sections 296 and 297 and under the ruling of Lebas v. Patriotic Assurance Company, supra. Under the rules of professional conduct, there is a further limitation on arguments which might be made. The rules of professional conduct provide, in part, in Rule 3.4-E that a lawyer shall not, "in trial allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, or personal knowledge of facts at issue, except when testifying as a witness, or state a personal opinion as to the justness of a cause; the credibility of a witness; culpability of a civil litigant; or the guilt or innocence of an accused. Logic dictates that if an attorney cannot be permitted to express a personal opinion about a particular subordinate fact that, a fortiori, in a case like this where liability itself is at issue there shouldn't be any expression of opinion about the ultimate decision that is the jury's function to determine, namely the amount to be awarded the plaintiff. Juries have been determining what are fair, just and reasonable damages for several hundred years, without influence of either suggested verdict amount or formulae for reaching such amount from counsel for litigants. CT Page 4296
Since the decision in Norwalk Street Railway Co. v. Appeal,69 Conn. 576 it has been the settled law of this state that its Constitution is a grant and not a limitation of power, and that, by the distribution of the powers of government into three distinct departments, legislative, executive and judicial, each confided to a separate magistry, the exercise of judicial power is forbidden to the General Assembly Bridgeport Public Library 
Reading Room v. Burroughs Home, 85 Conn. 310 (1912). See State v. Clemente, 166 Conn. 501, 508 (1974).
In enacting a constitution, there is no more important power that the people of Connecticut placed in their judiciary than the unfettered use of those means necessary where liability is contested in a jury trial to insure to all who come before the court a fair trial, a trial free from prejudice and improper influence on the jury's verdict.
Insofar as the plaintiff suggests that P.A. 89-319 imposes a duty on the judge in a jury trial where liability is at issue to permit a summatory remark suggesting a desired verdict amount or formula for arriving at it together with a curative instruction that it is the jury's sole function to determine what damages if any are to be awarded, the court holds that such an imposed duty under the particular facts and circumstances of this case where the court has found to do so would be fundamentally unfair, would interfere with the orderly performance by the Superior Court of its duties to insure a fair trial. See Adams v. Rubinow, 157 Conn. 150; State v. Clemente, supra, 166 Conn. 501, 509. The verdict will not be set aside for that reason.
Finally, the plaintiff claims the verdict should be set aside for failure to allow certain voir dire questions in which plaintiff's counsel wished to take the venire person through respective questions about damages.
The court heard arguments about plaintiff's voir dire questions and thus gave the plaintiff's counsel an opportunity to be heard. It was not required to to hear nor did it permit reargument on the same ground.
The purpose of voir dire is to permit inquiry as to possible bias or prejudice, not to educate the jury as to the law or repetitively pound home theories that will be urged during the trial, before the evidence begins.
The plaintiff claims that: (1) the court erred in barring the plaintiff from asking, during voir dire, whether, if fair, just and reasonable compensation for each element of damages, when added together, resulted in a large verdict, the potential CT Page 4297 jurors would lower the verdict just because of the amount of money involved; (2) in barring the plaintiff from asking, during voir dire, whether potential jurors thought there should be a dollar limit on jury verdicts; (3) in barring the plaintiff from asking, during voir dire, whether potential jurors felt that jury verdicts in the United states had gotten too high.
All of these questions were addressed to a particular juror, Mr. Mack, the first venire person to be voir dired and the first to be selected for service on the panel.
The juror had already indicated in response to plaintiff's counsel's questions that had previously been permitted by the court that nothing about the concept of money damages being awarded for personal injuries bothered him; nor was he specifically troubled about compensation for medical expenses, pain and suffering or permanent disability, and had no preconceived specific dollar amount which he would not go above or below no matter what the evidence in the case showed. Counsel was also permitted to ask if the venireperson thought there was a lawsuit crisis and the venireperson replied, "No."
The court is satisfied that the plaintiff had an adequate and fair opportunity to inquire of prospective jurors as to possible bias or inability to fairly serve.
For all of these reasons, both the Motion for Additur and the Motion to Set Aside the Verdict are DENIED.
FLYNN, JUDGE