[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On April 16, 1991, the plaintiff, Saturn Construction Co., Inc. ("Saturn"), entered into a $22,049,800 contract ("the Contract") with the defendant, the State of Connecticut Department of Public Works ("DPW"), to build the State of Connecticut Transportation Office Complex ("the Complex"). (Plaintiff's Verified Complaint, Count One, ¶ 6). In accordance with Article 35 of the Contract and General Statutes § 49-4, Saturn executed a labor and material bond and performance bond with the Insurance Company of America ("INA"). Id., ¶ 8.
The Contract provided that Saturn was to complete the Complex by July 25, 1992. Id., ¶ 7. However, Saturn alleges that construction and building code disputes caused periodic and significant suspensions of work, the issuance of more than 80 change orders in the Complex plan and specifications, and a substantial delay in the completion of the Complex. Id., ¶ 9. In addition, Saturn alleges that the DPW issued more than 320 change orders, further delaying the completion of the Complex. Id., ¶ 10. Therefore, on May 11, 1992, Saturn told the Commissioner of the DPW that due to the large number of change orders, it could not finish the project by July 25, 1992. Id., ¶ 11. Saturn alleges that the Commissioner of the DPW told Saturn that the change orders would cease. Id. Saturn alleges CT Page 4155 that the DPW did not cease issuing changes; rather, Saturn alleges that the DPW issued 226 additional change orders after May 11, 1992. Id.
On January 20, 1993, Saturn met with the Commissioners of the DPW, the Department of Transportation ("the DOT"), and a representative from the Attorney General's Office. Id., ¶ 12. At that meeting the Commissioner of the DOT told Saturn that it had to complete the Complex by April 30, 1993. Id. In response, Saturn stated that it could not complete the Complex by said date without accelerating its work. Id. Therefore, Saturn alleges that it asked the DPW to stop issuing change orders and to authorize and compensate the accelerated work. Id. Saturn estimated that the accelerated work and pending change orders would cost $1 million to $1.5 million. Id. Saturn alleges that although the DPW agreed to these requests, between the dates of January 20, 1993 and April 13, 1993, 77 additional change orders were issued. Id., ¶¶ 13-14.
On February 26, 1993, the DPW told Saturn to decelerate its work and advise it of Saturn's anticipated completion date. Id., ¶ 15. On March 4, 1993, Saturn responded, stating that it could not return to its previous schedule due to commitments made to subcontractors. Id. On March 18, 1993, pursuant to General Statutes § 4-61 (b), Saturn served a Demand for Arbitration on the Commissioner of the DOT and the American Arbitration Association based on the delays caused by the change orders, the failure to pay additional costs due to the change orders, and the failure to pay the acceleration costs. Id., ¶ 16.
By a letter dated April 14, 1993, the DPW terminated its contract with Saturn, citing Saturn's failure to comply with Article 33(1)(c-f) of the Contract. Id., ¶ 20. Article 33(1)(c) provides that Saturn may be terminated if it "refuse or fail, after notice of warning from the Commissioner, to supply enough properly skilled workmen or proper materials. Id., ¶ 26. Article 33(1)(d) provides that Saturn may be terminated if it "shall refuse or fail to prosecute the work or any part thereof, with such diligence as will insure its completion within the period herein specified (or any duly authorized extension thereof) or shall fail to complete the work within said period." Id. Article 33(1)(e) provides that Saturn may be CT Page 4156 terminated if it "shall fail to make prompt payment to persons supplying labor or materials for the work." Id. Article 33(1)(f) provides that Saturn may be terminated if it "shall fail or refuse to regard laws, ordinances, or the instructions of the Commissioner or otherwise be guilty of a substantial violation of any provisions of this contract, then the owner, without prejudice to any other rights or remedy it may have, may by seven (7) days notice to the contractor, terminate the employment of the contractor and his right to proceed, and may take possession of the work and complete the work by contract or otherwise, as the owner may deem expedient." Id.
On June 24, 1993, the State of Connecticut approved a bond referendum for additional funds. Id., ¶ 22. Subsequently, the DOT and the Office of Policy and Management ("the OPM") entered into a Takeover Agreement with Saturn's surety, INA. Id. The Takeover Agreement stated that INA had to finish the Complex by September 22, 1993. Id. On June 24, 1993, Saturn entered into a Completion Agreement with INA to finish the Complex. Id., ¶ 24. On July 20, 1993 the OPM notified Saturn, by letter, that it would not rescind Saturn's termination. Id., ¶ 25. On November 12, 1993, after completion of the Complex, Saturn filed an amended arbitration claim. Id., Count Three, ¶ 28.
On June 15, 1994, Saturn filed a complaint against the DPW, the DOT, and the OPM seeking injunctive relief. This action, designated as Docket No. 0705198, was withdrawn on October 11, 1994.
On September 20, 1994, Saturn filed its second action, a seven-count complaint against the DPW, the DOT, and the OPM alleging that the April 14, 1993 termination was wrongful, factually unsupported, and/or made in bad faith. Specifically, Saturn contests the DPW's bases for terminating Saturn. First, Saturn alleges that it supplied a sufficient quantity of properly skilled workmen and materials to construct the Complex, thus complying with Article 33(1)(c) of the Contract. Id., Count One, ¶ 27. Second, Saturn alleges that it exercised due diligence to ensure the completion of the Complex, as evidenced by the acceleration of the work, thus complying with Article 33(1)(d) of the Contract. Id. Third, Saturn alleges that CT Page 4157 it paid all persons supplying labor and materials for the Complex, thus complying with Article 33(1)(e) of the Contract. Id. Fourth, Saturn alleges that it complied with all applicable laws, ordinances, and instructions, thus fulfilling Article 33(1)(f) of the Contract. Id. In addition, Saturn alleges that it did not receive the seven-day notice required by Article 33(1)(f) of the Contract. Id.
Saturn's allegation that the April 14, 1993 termination was wrongful, factually unsupported and/or made in bad faith forms the basis for Saturn's claims. In Count One, Saturn claims that the defendants' April 14, 1993 termination deprived Saturn of its right to the benefits of the Contract in violation of Saturn's substantive and/or procedural due process rights under theFourteenth Amendment of the United States Constitution. In Count Two, Saturn claims that the defendants' April 14, 1993 termination deprived Saturn of its right to the benefits of the Contract in violation of Saturn's substantive and/or procedural due process rights under Article 1, Section 10
of the Constitution of the State of Connecticut.
In Count Three, Saturn claims that the defendants failed to comply with General Statutes § 4-61 in violation of Saturn's due process rights under theFourteenth Amendment of the United States Constitution. In Count Four, Saturn claims that the defendants failed to comply with General Statutes § 4-61 in violation of Saturn's due process rights under Article 1, Section 10 of the Constitution of the State of Connecticut.
In Count Five, Saturn claims that if General Statutes § 4-61 permits the State to unilaterally preclude arbitration proceedings, General Statutes § 4-61 violates the Fourteenth Amendment of the United States Constitution
by granting the State excessive authority to deprive claimants of their rights without meaningful or prompt notice, hearing or review. In Count Six, Saturn claims that if General Statutes § 4-61 permits the State to unilaterally preclude arbitration proceedings, General Statutes § 4-61 violates Article 1, Section 10 of the Constitution of the State of Connecticut by granting the State excessive authority to deprive claimants of their rights without meaningful or prompt notice, hearing or CT Page 4158 review. In Count Seven, Saturn claims that preliminary equitable relief is necessary to prevent irreparable harm. In its prayer for relief, Saturn seeks declaratory judgments and temporary and permanent injunctions.
On October 24, 1994, the defendants filed a motion to dismiss Saturn's complaint and application for temporary and permanent injunction on the ground that the court does not have subject matter jurisdiction, primarily due to sovereign immunity and the prior pending action doctrine. On September 7, 1995, the court, Corradino, J., denied the defendants' motion to dismiss. On September 22, 1995, the defendants filed a motion to strike Counts One, Two, and Seven of Saturn's complaint and Saturn's prayer for relief. The defendants filed a memorandum in support of their motion to strike. The defendants move to strike Counts One and Two on the ground that Saturn fails to state a claim upon which relief can be granted. The defendants move to strike Count Seven on the ground that Saturn fails to allege sufficient factual allegations to state a claim upon which relief can be granted. The defendants move to strike Saturn's prayer for relief on the ground that declaratory judgments cannot be provided under General Statutes § 52-29.
On January 11, 1996 Saturn filed an objection to the defendants' motion to strike. On the same date, Saturn filed a memorandum in support of its objection to the defendants' motion to strike. On January 31, 1996, the court, Hennessey, J., entered an order stating that "[a]s to Count 7 the defendants argued that they wish to proceed with arbitration. Since this is the relief being sought by the plaintiff in that count, there is no need to address the issues raised as to that count."
The purpose of a motion to strike "is to test the legal sufficiency of a pleading." RK Constructors, Inc. v.Fusco Corp., 231 Conn. 381, 384, 650 A.2d 153 (1994). For example, the motion to strike "contest[s] the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Novametrix Medical Systems, Inc.v. BOC Group, Inc., 224 Conn. 210, 214-15, 618 A.2d 25
(1992). In addition, the motion to strike may test "the legal sufficiency of any prayer for relief in any such complaint, counterclaim or cross-complaint." Practice Book CT Page 4159 § 152. See also Carchidi v. Rodenhiser, 209 Conn. 526,531, 551 A.2d 1249 (1989).
COUNTS ONE TWO
The plaintiff claims that the defendants deprived the plaintiff of its substantive and/or procedural due process rights under the Fourteenth Amendment of the United States Constitution[1]
and Article First, § 10 of the Connecticut Constitution.[2] The defendants argue that the plaintiff has no property right under constitutional analysis because a contract is not recognized as a property interest. The plaintiff asserts that a contract terminable only for cause creates more than just a unilateral expectation. PROPERTY INTEREST[3]
"Property interests are more than abstract needs, desires or unilateral expectations of benefits or privileges. Rather, a person must have a legitimate claim of entitlement to a benefit or privilege to have a property interest in that benefit. Board of Regents v. Roth,408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source of state law . . . . Cleveland Board ofEducation v. Loudermill, 470 U.S. 532, 538,105 S.Ct. 1487, 84 L.Ed.2d 494 (1984), quoting Board of Regents v.Roth, supra, 577 . . . ." (Citations omitted; internal quotation marks omitted.) Harkless v. Rowe, 232 Conn. 599,618, 657 A.2d 562 (1995), quoting Double I Ltd. Partnershipv. Planing Zoning Commission, 218 Conn. 65, 76,588 A.2d 624 (1991).
"The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except `for cause.' Logan v. Zimmerman Brush Co., 455 U.S. 422,430, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). A person has an entitlement in a benefit or privilege if there are rules or mutually explicit understandings that support his claim of entitlement to the benefit . . . that he may invoke at a hearing . . . ." (Citations omitted; internal quotation marks omitted.) Connecticut EducationAssn. v. Tirozzi, 210 Conn. 286, 294, 554 A.2d 1065 (1989). "A party seeking to demonstrate a property interest CT Page 4160 entitled to protection under the due process clause cannot simply rely-upon the procedural guarantees of state law or local ordinance . . . . A statute or ordinance providing procedural guarantees does not create a constitutionally protected property interest unless it sets forth substantive criteria that limit the discretion of the decision making body . . . ." (Citations omitted; internal quotation marks omitted.) Double I Ltd. Partnership v.Planning Zoning Commission, 218 Conn. 65, 78,588 A.2d 624 (1991).
A contract creates an entitlement if the contract's provisions permit termination only for cause. HotelSyracuse Inc. v. Young, 805 F. Sup. 1073, 1084 (N.D.N Y 1992). See e.g. Board of Regents v. Roth, 408 U.S. 564,577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); ClevelandBoard of Education v. Loudermill, 470 U.S. 532, 538,105 S.Ct. 1487, 84 L.Ed.2d 494 (1984). A contractor's right pursuant to a contract with the state creates a "property interest protected by the due process clause. GeneralElec. v. New York State Dep't of Labor, 936 F.2d 1448
(2d Cir. 1991). This property interest, however, arises only where there exists a contractual or state law entitlement . . . ." (Internal quotation marks omitted.) ChristGatzonis Elec. v. New York City Sch. Const., 23 F.3d 636,639 (2d Cir. 1994). It is well established in constitutional law that property interests can be created by a contract.
Therefore, the defendants' contention is misguided. The cases cited by the defendants in support of the proposition that a breach of contract cannot give rise to a constitutional violation all concern contracts where a "for cause" provision was absent. The "for cause" provision is what creates more than just an expectation but a legitimate entitlement.
Relying on the plaintiff's allegations as admitted,Dennison v. Klotz, 12 Conn. App. 570, 576-77, 532 A.2d 1311
(1987), cert. denied 206 Conn. 803, 535 A.2d 1317 (1988), it is clear the plaintiff has alleged a legally sufficient claim. Article 33 of the contract between the plaintiff and the defendants provides that the plaintiff may only be terminated if it "shall refuse or fail to prosecute the work or any part thereof, with such diligence as will CT Page 4161 insure its completion within the period herein specified (or any duly authorized extension thereof) or shall fail to complete the work within said period," or if the plaintiff "shall fail to make prompt payment to persons supplying labor or materials for the work," or if the plaintiff "shall fail or refuse to regard laws, ordinances, or the instructions of the Commissioner or otherwise be guilty of a substantial violation of any provisions of this contract." Consequently, the contract between the parties contained a "for cause" termination provision establishing more than a mere expectation of benefits under the contract.
EQUITABLE RELIEF AND INJUNCTIONS
The defendants also move to strike the plaintiff's prayer for relief which seeks declaratory judgments and injunctions. The defendants argue that the plaintiff is not entitled to any equitable relief because the plaintiff's rights regarding the termination of the contract are set forth in General Statutes § 4-61. In response, the plaintiff argues that the defendants have failed to meet their burden and show that the court cannot permit the action to proceed.
Declaratory Judgments
"In testing the sufficiency of a complaint for declaratory relief, the question is not whether the plaintiff is entitled to the declaratory relief he seeks in accordance with the theory he states, but rather, it is whether he is entitled to a declaration of rights at all under the allegations of his complaint. 22A Am.Jur.2d, Declaratory Judgments § 215. At this stage of the proceedings, the sole question for the court is `whether the allegations entitle them to make good on their claim that they are being denied [their constitutional] rights.'Gomillion v. Lightfoot, 364 U.S. 339, 341 (1960). The question of whether or not the state's action or failure to act rises to the level of a constitutional violation goes to the merits of this action because it constitutes a `bona fide and substantial question or issue in dispute . . . which requires settlement between the parties . . .' by way of the declaratory judgment which the plaintiff seeks. A motion to strike may not be utilized as a device for the CT Page 4162 determination, as a matter of law in advance of trial, of how that issue should be resolved. See Hartford Accident Indemnity Co. v. Williamson, 153 Conn. 345, 347 (1966)."Scheff v. O'Neill, 1 Conn. L. Rptr. 640, 643 (1990). "Therefore, a successful motion to strike an action for a declaratory judgment upon the ground of available alternative redress . . . must show that the court could not in an exercise of sound discretion permit the action to proceed." England v. Coventry, 183 Conn. 362, 365 (1981).
The defendants argue that since the plaintiff has an alternative means available — arbitration —, and has utilized that means, the court should not entertain a prayer for relief requesting a declaratory judgment. However, the defendants, fail to explain why the action should not proceed under the holding in England v.Coventry, supra. While the defendants note that a declaratory judgment may be used to interpret an administrative order, declaratory judgment cannot review whether the agency acted correctly in rendering its order,Hartford Electric Light Co. v. Water Resources Commission,162 Conn. 89, 105, 291 A.2d 721 (1971). The instant case presents a distinguishable situation.
The plaintiff is not requesting the court to declare the actions of the agency unconstitutional per se. The plaintiff contends that the result of the agency's action was unconstitutional in that its future ramifications will serve to deny the plaintiff an opportunity to ever get a construction contract again. The plaintiff's prayer for relief, therefore, requests more than a simple review of an agency's action. The prayer for relief asks for a review of the substantive result of the agency's actions.
Injunctions
"A party seeking injunctive relief has the burden of alleging and providing irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.) Advest. Inc. v. Wachtel, 235 Conn. 559, 562-63,668 A.2d 367 (1995). "The questions of irreparable harm and availability of an adequate remedy at law are threshold issues which the Court must consider before it can determine whether injunctive relief is warranted."Hartford v. American Arbitration Assn., 174 Conn. 472, 476, CT Page 4163391 A.2d 137 (1978). "A finding that a substantial probability of irreparable harm exists requires a two part analysis: (1) whether there is a substantial probability that the alleged harm will result; and (2) whether the harm, if it occurs, will be irreparable." InternationalAssn. of Firefighters v. Serrani, 26 Conn. App. 610, 616,602 A.2d 1067 (1992).
The plaintiffs have argued that if the result of the defendants' actions are not addressed, and the plaintiff's status remains as is — that of a construction company with a letter of termination in its past — the plaintiff will be unable to procure a public works contract. The defendants assert that to receive injunctive relief, the plaintiff must allege substantial and irreparable harm. The plaintiff's allegations sufficiently state harm deserving of injunctive relief.
If the plaintiff's claims are true, the plaintiff will face great economic loss because it will have lost the ability to bid for public works contracts. This harm is substantial and irreparable in that there is no adequate alternative for the plaintiff to make up for its loss. While there may be private contracts to support its business, the plaintiff will be blackballed from public contracts and possibly this reputation will affect private contracts as well. Therefore the plaintiff has shown that irreparable harm will befall it if the court does not entertain its claim of equitable relief. Accordingly the defendants' motion to strike the plaintiff's prayer for relief is denied.
The court concludes that the plaintiff has sufficiently alleged a claim of a constitutional violation based on the defendants' alleged breach of contract. Additionally, the plaintiff's allegations are sufficient to sustain its request for equitable relief in its prayer for relief. Accordingly the defendants' motion to strike is denied.
M. Hennessey, J.