GREGORY BARTHOLOMEW *v.* NANCY SCHWEIZER ET AL.
(13921)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued January 17—decision released March 12, 1991

*Frederick W. Danforth, Jr.,* with whom were *Nada K. Morin* and, on the brief, *Marcella Gereg,* for the appellants (defendants).

*Max F. Brunswick,* for the appellee (plaintiff).

PETERS, C. J. The principal issue in this appeal is the constitutionality of General Statutes § 52-216b,[1] which permits closing argument to the trier of fact to include counsel's suggestion of an appropriate monetary recovery. The plaintiff, Gregory Bartholomew, brought this personal injury action to recover damages arising out of an automobile accident allegedly caused by the negligent driving of the named defendant, Nancy Schweizer,

---

[1] "[General Statutes] Sec. 52-216b. ARTICULATION TO TRIER OF FACT OF AMOUNT OF DAMAGES CLAIMED TO BE RECOVERABLE PERMITTED. (a) In any civil action to recover damages resulting from personal injury or wrongful death, counsel for any party to the action shall be entitled to specifically articulate to the trier of fact during closing arguments, in lump sums or by mathematical formulae, the amount of past and future economic and noneconomic damages claimed to be recoverable.

"(b) Whenever, in a jury trial, specific monetary sums or mathematical formulae are articulated during closing arguments as provided for in subsection (a) of this section, the trial court shall instruct the jury that the sums or mathematical formulae articulated are not evidence but only arguments and that the determination of the amount of damages to be awarded, if any, is solely the jury's function."

of a car owned by the defendant General Motors Acceptance Corporation. The trial court, *Gormley, J.,* granted the plaintiff's motion for summary judgment on the issue of liability on September 5, 1989. After the effective date of Public Acts 1989, No. 89-319, now codified as General Statutes § 52-216b,[2] a jury trial on the issue of damages resulted in a plaintiff's verdict of $150,000, in accordance with which the trial court, *Berdon, J.,* rendered judgment in favor of the plaintiff. We transferred the defendants' appeal from that judgment to this court pursuant to Practice Book § 4023, and now affirm.

The jury could reasonably have found that the nineteen year old plaintiff was injured when, on September 14, 1985, the defendant Schweizer drove her car so as to strike the plaintiff's car from the rear. As a result of the accident, the plaintiff suffered pain and stiffness in his back, and missed work for five weeks, working only half-time for two more weeks before returning to work full-time. At the time of the accident, the plaintiff had been actively engaged in karate training, which he had begun six months earlier. Because of the injuries received in the accident, the plaintiff was unable to pursue his future plans for advanced karate training, for participation in karate competition and for qualification as a karate instructor.

On October 27, 1989, toward the end of the jury trial on damages, counsel for the plaintiff informed counsel for the defendants that he intended, in his closing argument, to suggest to the jury specific monetary sums as damages for the plaintiff's injuries. The trial court permitted this argument,[3] despite the defendants'

---

[2] General Statutes § 52-216b became effective on October 1, 1989.

[3] As permitted by General Statutes § 52-216b, counsel for the plaintiff suggested in his closing argument a mathematical formula by which the jury could calculate damages. He argued: "What I'm asking you to con-

motion in limine that it be disallowed on state constitutional grounds. The trial court's subsequent charge to the jury included a cautionary instruction, in accordance with subsection (b) of § 52-216b, that arguments of counsel are not evidence.[4] The trial court also

sider, ladies and gentlemen, forty-nine more years Mr. Bartholomew's advice is [sic]—he may live longer, he may live less, but the tables—the mortality tables tell us statistically somebody of his age is likely to live that long. . . . If you find that he suffered a permanent injury and if you find that he is unable to resume his karate activities and you have to take into consideration the fact that he has to live for the rest of his life with that, and if you so find his Honor is going to instruct you that you, in addition to all of his special or out-of-pocket damages, you are to make an award that you feel is fair and just compensation for the fact that he will have this injury for the rest of his life and that he will be unable to resume his chosen activities for the rest of his life, and you're talking about forty-nine years. Now, ladies and gentlemen, I know it's hard to put a figure on such a—an award, and his Honor's going to instruct you that the sole determination of what is fair, just and reasonable is up to you alone. But in any case involving personal injuries, it is proper for attorneys to state specific amounts during closing arguments of past and future and non-economic damages that they claim to be recoverable. And what I'm saying here is that—what I would ask you to do is to take each year of the rest of Mr. Bartholomew's life, and [ask] what is it worth to have a disability for a year, is it worth a thousand, two thousand dollars for a year? And if you figure it out as what it is worth to live with such a disability for a whole year, I don't think it's unreasonable to consider that it's worth two thousand dollars or three thousand dollars a year for the rest of your life to have to live like that[,] having given up your chosen—being forced to given [sic] up your chosen field."

[4] The trial court gave the following instruction in compliance with subsection (b) of General Statutes § 52-216b: "Now, counsel, in his closing argument, has suggested that you consider awarding certain sums to the plaintiff for his injuries. In fact, he suggested certain amounts on an annualized basis. These sums suggested by counsel [are] not evidence but only argument of counsel. The determination of the amount to be awarded, if any, is solely the jury's function. In sum, taking all these elements into consideration, you should determine the fair, just and reasonable compensation for the injuries sustained by the plaintiff as a result of this accident which occurred on September the 14th, 1985, that is, you should determine the full amount necessary to compensate him for all the injuries and effects thereof which were proximately caused as a result of the accident for the period of time prior to the trial and for the future if you should find that there are any future damages. You must remember that the plaintiff has the burden of proving his injuries and the effects thereof by a fair preponderance of the

instructed the jury that it could consider, as a compensable injury, the plaintiff's claim that he could not pursue karate as an avocation or as a career because of the injuries he had sustained in the accident. The defendants excepted to the portion of the charge concerning the plaintiff's karate activities.

After the jury returned a verdict awarding the plaintiff $150,000 in damages, the defendants moved to set aside the verdict and for remittitur. The trial court denied the motions and rendered judgment on the verdict for the plaintiff.

The defendants' appeal from the judgment raises two constitutional and two nonconstitutional issues. The defendants contend that § 52-216b is unconstitutional because it violates the separation of powers provision of the Connecticut constitution and because it infringes upon the constitutional right to trial by an impartial jury. They also maintain that the trial court's "karate charge" was contrary to law and that the trial court should have set aside the jury's verdict as excessive in amount, or reduced it by a remittitur. We are unpersuaded by any of these contentions.

I

Because a validly enacted statute carries with it a strong presumption of constitutionality, those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt. *State* v. *Breton,* 212 Conn. 258, 269, 562 A.2d 1060 (1989); *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 391, 512 A.2d 152 (1986); *Eielson* v. *Parker,* 179 Conn. 552, 560, 427 A.2d 814 (1980); *State* v. *Darden,* 171 Conn. 677, 678, 372 A.2d 99 (1976). In construing a statute, moreover, we will search for an effective and constitutional con-

---

evidence, that is, by the better or weightier evidence, and you may only compensate him for those matters to the extent of his proof."

struction that reasonably accords with the legislature's underlying intent. *State* v. *Floyd,* 217 Conn. 73, 79, 584 A.2d 1157 (1991); *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* 209 Conn. 692, 705–706, 553 A.2d 596 (1989).

## A

The defendants' principal claim for the unconstitutionality of § 52-216b focuses on the alleged incompatibility of the statute with the separation of powers provision of article second of the Connecticut constitution. That article provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

Recognizing that executive, legislative and judicial powers frequently overlap, we have consistently held that the doctrine of the separation of powers cannot be applied rigidly. *University of Connecticut Chapter, AAUP* v. *Governor,* supra, 394; *Adams* v. *Rubinow,* 157 Conn. 150, 155, 251 A.2d 49 (1968); *In re Application of Clark,* 65 Conn. 17, 38, 31 A. 522 (1894). "In the context of challenges to statutes whose constitutional infirmity is claimed to flow from impermissible intrusion upon the judicial power, we have refused to find constitutional impropriety in a statute 'simply because it affects the judicial function . . . .' " (Citation omitted.) *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 522, 461 A.2d 938 (1983). A statute violates the constitutional mandate for a separate judicial magistracy only "if it represents an effort by the legislature to exercise a power which lies exclusively under the control of the courts . . . or if it establishes a significant interference with the orderly conduct of the Superior Court's judicial functions." (Citations

omitted.) *State* v. *Darden,* supra, 679; *University of Connecticut Chapter, AAUP* v. *Governor,* supra.

Concededly, our decisions in *Carchidi* v. *Rodenhiser,* 209 Conn. 526, 551 A.2d 1249 (1989), and *Pool* v. *Bell,* 209 Conn. 536, 551 A.2d 1254 (1989), were the occasion for the enactment of § 52-216b. In these cases we held as a matter of judicial policy that, in their closing arguments to a jury, counsel would no longer be permitted to suggest the pecuniary amount of damages claimed to be recoverable either by advancing a "lump sum" amount; *Carchidi* v. *Rodenhiser,* supra, 535; or by articulating a mathematical formula. *Pool* v. *Bell,* supra, 539–40. The legislative history of § 52-216b demonstrates that its purpose was to overturn the limitations on oral argument that we had imposed. See Substitute House Bill No. 6990, 1989 Sess.; 32 S. Proc., Pt. 11, 1989 Sess., p. 3913, remarks of Sen. Anthony V. Avallone; 32 H.R. Proc., Pt. 14, 1989 Sess., p. 4781, remarks of Rep. Jay B. Levin. Although this record establishes that the statute "affects the judicial function," it does not resolve the issue whether the function regulated is one that is properly or historically within the exclusive control of the judicial branch of government.

Citing some of the arguments of policy on which we relied in our decision in *Carchidi,* the defendants advance three contentions to sustain their position that the supervision of closing arguments by counsel is a matter within the exclusive control of the judiciary. They urge us to conclude that § 52-216b conflicts with (1) the traditionally recognized broad discretion of trial courts to control closing arguments, (2) the judicial authority to discipline and regulate the conduct of counsel, and (3) the prohibition against the submission of the ad damnum clause to the jury contained in Practice Book § 313. We disagree that the statute, fairly construed, is unconstitutional.

Although we have regularly held that trial courts have broad discretion to control oral arguments, we have never held that the court's authority in this regard is *exclusive* of concurrent legislative authority. For instance, the defendants cite *State* v. *Hoyt,* 47 Conn. 518, 535–36 (1880), as having established that a trial court has the power to limit the time allotted for closing arguments of counsel. In that case, however, a statute provided that " 'in no trial before the Superior Court . . . shall counsel occupy more than one hour in argument, unless the court shall, on motion for special cause before the commencement of argument, allow a longer time.' "[5] Id., 535. The court in *Hoyt* assumed, however, the existence of concurrent legislative and judicial authority to limit the arguments of counsel. The only issue that the court addressed was whether such a limitation violated a criminal defendant's constitutional right "to be heard by himself and by counsel." Id.

None of the cases that recite the uncontroverted principle that " '[t]he trial court is invested with a large discretion with regard to the arguments of counsel' "; *Tomczuk* v. *Alvarez,* 184 Conn. 182, 193, 439 A.2d 935 (1981); *Levin* v. *Ritson,* 179 Conn. 223, 226, 425 A.2d 1279 (1979); see also *State* v. *Herring,* 210 Conn. 78, 102, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989); suggests that such power is exclusive of legislative authority. Like the authority to adjudge the competency of witnesses, where we have recognized that exercise of a legislative prerogative to limit judicial discretion is constitutionally permissible; *State* v. *James,* 211 Conn. 555, 560–63, 560 A.2d 426 (1989); the existence of discre-

---

[5] The statute cited in *State* v. *Hoyt,* 47 Conn. 518, 535 (1880), was General Statutes (1875 Rev.) p. 61, § 9. This statutory provision has survived, with minor change, into the present; it is now codified as General Statutes § 52-209.

tionary judicial authority over oral arguments does not automatically preclude some measure of legislative regulation.

We turn then to the defendants' allegation that the challenged statute impermissibly interferes with the orderly conduct of the court's constitutional responsibility to discipline and regulate the conduct of counsel. The defendants perceive a conflict between § 52-216b and Rule 3.4 (e) of the Rules of Professional Conduct, which was adopted by the judges of the Superior Court pursuant to their rulemaking authority. Rule 3.4 (e) provides in relevant part that a lawyer shall not, at trial, "allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused." A conflict arises, according to the defendants, because § 52-216b permits attorneys in civil actions to argue monetary figures based on personal opinion or speculation not supported by the evidence. We are not persuaded that the legislature intended to override the authority of the court to require attorneys to adhere to this ethical prohibition.

It is true that in *Carchidi* this court, acting within its common law power to declare the law in the absence of legislative action, concluded that the consideration of appropriate monetary damages for pain and suffering, like the determination of the credibility of witnesses, is a function that should be performed by the trier of fact rather than by trial counsel, whose statements are made "in the course of the zealous representation of a client's cause" and may tend to be "self-serving." *Carchidi* v. *Rodenhiser, supra,* 534. We did not hold, however, that such statements would con-

stitute unprofessional or unethical conduct. Indeed, we acknowledged that such statements had long been permitted in Connecticut, subject only to the sound discretion of the trial court. Id., 529–30, quoting *Levin* v. *Ritson,* supra, 227; see also *Cascella* v. *Jay James Camera Shop, Inc.,* 147 Conn. 337, 342–43, 160 A.2d 899 (1960).

We find in § 52-216b no evidence that the legislature intended to abrogate the power of the court to discipline attorneys or to control their statements during oral argument as justice may require. The history of the enactment of § 52-216b indicates that it was intended essentially to reinstate the governing legal principles that existed prior to our decisions in *Carchidi* and *Pool.* In the House of Representatives, the legislator who had introduced the bill and had reported it out of committee expressly stated that trial judges would retain the power, under the statute, to forbid attorneys to argue damages if no factual basis for such argument had been established in the course of trial. 32 H.R. Proc., Pt. 14, 1989 Sess., p. 4780, remarks of Rep. Jay B. Levin. Representative Levin further indicated that the bill was not intended to make "a dramatic change" in the law of Connecticut, but rather to restore the process that had been followed prior to this court's decisions that year. Id., p. 4781. His explanation that "an appropriate basis would have to be laid" for such arguments; id.; indicates that it was his expectation, as a sponsor of the bill, that the trial court would retain broad discretion, even under the statute, to preclude such arguments if unsupported by the evidence presented. "The statement of the legislator who reported the bill out of committee carries particular weight and deserves careful consideration." *Manchester Sand & Gravel Co.* v. *South Windsor,* 203 Conn. 267, 275, 524 A.2d 621 (1987); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 15 n.4, 434 A.2d 293 (1980).

Because the language of § 52-216b does not purport to limit the appropriate exercise of judicial discretion, we will not ascribe to the legislature an unexpressed intention to encroach upon the fundamental judicial power to control the conduct of attorneys in the course of a trial.

Despite the enactment of § 52-216b, the trial court continues to have the power to monitor closing arguments in the service of justice. The statute does not purport to abrogate the power or the duty of the trial court to comment upon the propriety of counsel's argument; see *State* v. *Herring,* supra; to give curative instructions if necessary after the arguments of counsel to prevent prejudice; see *Tomczuk* v. *Alvarez,* supra; or to declare a mistrial or to set aside a verdict if counsel's comments were so prejudicial that no curative instruction could preserve the parties' right to a fair trial. See *Meadows* v. *Vigneault,* 152 Conn. 708, 710, 206 A.2d 840 (1965).[6]

The defendants finally argue, in support of their challenge to the constitutionality of § 52-216b under the separation of powers doctrine, that the statute violates the judicial policy expressed in Practice Book § 313, which prohibits the submission of the ad damnum clause to the jury. This court, to be sure, has found some inconsistency between permitting arguments regarding monetary amounts and the policy underlying Practice Book § 313. *Carchidi* v. *Rodenhiser,* supra, 532–33. In view of the fact that such arguments had long been per-

---

[6] General Statutes § 52-216b also would not preclude promulgation of a rule, similar to that which we adopted with respect to comment on inferences to be drawn from missing witnesses; *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 674, 165 A.2d 598 (1960); that would require advance notice of counsel's intention to make an argument in accordance with the statute, so as to afford opposing counsel a fair opportunity to respond. See *State* v. *Daniels,* 180 Conn. 101, 113, 429 A.2d 813 (1980); see also *Pedersen* v. *Vahidy,* 209 Conn. 510, 525, 552 A.2d 419 (1989).

mitted within the discretion of the trial court, however, we cannot say that the rule itself precludes the legislature from reaching a different conclusion regarding the policy concerns at issue.

In *Carchidi,* we recognized that our decision placed Connecticut among a small number of states that prohibit counsel from commenting on the value of pain and suffering. Id., 534. A substantial majority of states that have considered this question have concluded that suggestions of monetary sums for pain and suffering are essentially similar to other inferences from evidence that counsel are properly permitted to suggest in closing argument, in the discretion of the trial court. See, e.g., *Evening Star Newspaper Co.* v. *Gray,* 179 A.2d 377, 382 (D.C. 1962); *Yates* v. *Wenk,* 363 Mich. 311, 317–20, 109 N.W.2d 828 (1961).[7] This diversity of reasoned opinion persuades us that the propriety of permitting counsel to argue specific monetary sums for pain and suffering is a matter of public policy, which the legislature has the authority to resolve. In the absence of a demonstrated infringement on the fundamental powers or responsibilities of a coordinate department of government, "the primary responsibility for formulating public policy must remain with the legislature." *State* v. *Whiteman,* 204 Conn. 98, 103, 526 A.2d 869 (1987); *Kellems* v. *Brown,* 163 Conn. 478, 491, 313 A.2d 53 (1972).

Section 52-216b, properly construed, does not infringe upon the broad discretion of the trial court to

---

[7] As one judge has observed, dissenting from a view similar to that taken by this court in *Carchidi* v. *Rodenhiser,* 209 Conn. 526, 551 A.2d 1249 (1989), "[t]he jury must observe, weigh, and then finally equate the evidence of pain with a money judgment. . . . Since the verdict must be consistent with the evidence, in other words, inferrable from it, it should follow that counsel's estimate of the value should also be inferrable from the evidence." *Caylor* v. *Atchison, T. & S.F. R. Co.,* 190 Kan. 261, 274, 374 P.2d 53 (1962) (Wertz, J., dissenting).

regulate arguments of counsel. We concur, accordingly, with the conclusion of the trial court that the statute does not violate the constitutional provision regarding the separation of powers.

## B

The defendants also assert that § 52-216b is unconstitutional because it infringes upon the right to trial by an impartial jury. The Connecticut constitution provides, in article first, § 19, that "[t]he right of trial by jury shall remain inviolate." Although the right to a trial by jury encompasses the right to have the jury " 'pass upon the factual issue of damages' "; *Seals* v. *Hickey,* 186 Conn. 337, 351, 441 A.2d 604 (1982), quoting *Prosser* v. *Richman,* 133 Conn. 253, 256, 50 A.2d 85 (1946); we disagree with the defendants' claim that the statute infringes upon this right.

In support of their contention that § 52-216b violates the constitutional guarantee of the right to trial by jury, the defendants again rely extensively upon our discussion of these concerns in *Carchidi.* We there noted that the risk of potential prejudice to litigants caused by arguments regarding the monetary value of noneconomic injuries might permit "an unwarranted intrusion into the domain of the jurors." See *Carchidi* v. *Rodenhiser,* supra, 535. As we noted in Part A above, this discussion must be read in context. In the absence of authoritative statutory guidance, we expressed a strong preference, as a matter of common law policy, for restricting the scope of closing arguments with respect to monetary assessments of damages. We did not ground these prudential policy considerations in constitutional law.

In order to minimize the risk of possible prejudice, subsection (b) of § 52-216b requires the trial court to give the jury a curative instruction, when specific monetary sums or mathematical formulae have been artic-

ulated during closing arguments, to inform the jury that the sums or formulae "are not evidence but only arguments and that the determination of the amount of damages to be awarded, if any, is solely the jury's function." The defendants contend, nonetheless, that such arguments of counsel are inevitably so prejudicial that no curative instruction can ensure a fair result after an attorney has posited such a value.

Although this court expressed its doubt as to the efficacy of curative instructions following oral arguments about monetary damages; *Carchidi* v. *Rodenhiser,* supra, 535; we reiterate that these doubts do not rise to the level of a constitutional concern. Our courts routinely rely on the ability of jurors in both civil and criminal cases to follow a trial court's instructions to disregard arguments not supported by the evidence. See, e.g., *Vajda* v. *Tusla,* 214 Conn. 523, 538, 572 A.2d 998 (1990); *State* v. *Fullwood,* 194 Conn. 573, 584, 484 A.2d 435 (1984). The legislature's inclusion of subsection (b) in § 52-216b merely codifies this common understanding. A substantial majority of the states that have considered the question of permitting counsel to argue monetary amounts for pain and suffering have concluded that such a curative instruction is usually adequate to preserve the rights of all the parties. See, e.g., *Nicholson* v. *Blanchette,* 239 Md. 168, 176–77, 210 A.2d 732 (1965); see also annot., 14 A.L.R.3d 541 (1967). The Supreme Court of Washington, for instance, observed that "[a]rgument is not evidence, and we cannot attribute to any jury in this state lack of sufficient mentality to distinguish between the two. This is especially true after the court has instructed that any remark of counsel not sustained by the evidence should be disregarded." *Jones* v. *Hogan,* 56 Wash. 2d 23, 31–32, 351 P.2d 153 (1960). If in any case the statements of counsel so exceed the bounds of propriety that no curative instruction can remove their taint, the court retains the

power and the duty to declare a mistrial or to set aside a jury's verdict. See *Meadows* v. *Vigneault,* supra.

In the present case, the plaintiff's own counsel reminded the jury, before suggesting an amount for consideration, that "the sole determination of what is fair, just and reasonable" was a matter for the jury alone to decide. Following the arguments of counsel, the trial court, in compliance with the statute, properly instructed the jury that the plaintiff's counsel's suggested amounts were "not evidence but only argument of counsel," and that "[t]he determination of the amount to be awarded, if any, is solely the jury's function." In light of the cautionary safeguard incorporated into the statute and the proper cautionary instruction given in this case, we conclude that the arguments permitted by § 52-216b did not violate the defendants' right to a trial by jury.

## II

The defendants also challenge the validity of the plaintiff's judgment on two nonconstitutional grounds. They assert that (1) the trial court's "karate charge" improperly stated the law of damages in Connecticut, and (2) the verdict was excessive as a matter of law. We find no merit in either of these claims.

## A

The defendants contend that the trial court improperly charged the jury that it could consider evidence regarding the plaintiff's karate activities in its determination of damages. They assert that the charge was flawed in two respects: (1) it created a new category of damage awards for "loss of special talent," and (2) it was duplicative because the trial court gave the instruction regarding karate twice, once in regard to the period of time between the accident and the trial and once in regard to the future. Our review of the

charge in its entirety persuades us that it is an accurate statement of the law of damages in Connecticut.

A plaintiff is entitled to recover as damages "the award of an amount based on the destruction of the capacity to carry on life's activities, as well as compensation for conscious pain and suffering." *Katsetos* v. *Nolan,* 170 Conn. 637, 659, 368 A.2d 172 (1976); see also *Mather* v. *Griffin Hospital,* 207 Conn. 125, 150, 540 A.2d 666 (1988); *Waldron* v. *Raccio,* 166 Conn. 608, 619, 353 A.2d 770 (1974). The trial court's discussion of the plaintiff's interest in karate as an avocation or as a career indicated only that such evidence could be considered as an example of the loss of his capacity to enjoy certain activities.

A plaintiff's right to recover compensation for injuries incurred encompasses both past and future damages arising from the same causal event. See, e.g., *Mather* v. *Griffin Hospital,* supra, 137–50. The plaintiff was required, moreover, under the principles governing the doctrine of res judicata, to bring all such claims in one action. See *Duhaime* v. *American Reserve Life Ins. Co.,* 200 Conn. 360, 363–65, 511 A.2d 333 (1986). "[T]he purpose of a law suit is not only to do substantial justice but to bring an end to controversy." F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.2, p. 590. It was not duplicative, therefore, for the trial court to inform the jury that it could consider the plaintiff's alleged inability to participate in karate activities in regard to both past and future damages.

B

The defendants argue, finally, that the verdict of $150,000 was excessive as a matter of law in light of the fact that the plaintiff suffered a "relatively minor" soft tissue injury and had incurred medical expenses and lost wages that were small in relation to the jury's

award. They claim that the trial court should have set aside the verdict or ordered a remittitur.

A trial court has the inherent power to set aside as excessive a verdict that, in the court's opinion, is not supported by the evidence adduced. *Buckman* v. *People Express, Inc.,* 205 Conn. 166, 175, 530 A.2d 596 (1987). That power, however, is limited by the litigants' right to have factual issues determined by the jury. *Mather* v. *Griffin Hospital,* supra, 138. "The size of the verdict alone does not determine whether it is excessive. 'The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.' *McKirdy* v. *Cascio,* 142 Conn. 80, 86, 111 A.2d 555 (1955) . . . . In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict." (Citations omitted.) *Mather* v. *Griffin Hospital,* supra, 139.

In our determination of whether a jury verdict is unjust, "this court places great weight on the ruling of the trial court in refusing to set aside the verdict as excessive. Because the trial court had an opportunity far superior to ours to evaluate the evidence and to sense the tenor of the trial, every reasonable presumption is made in favor of the correctness of its ruling; its conclusion will not be disturbed unless there is a clear abuse of discretion." *Kiniry* v. *Danbury Hospital,* 183 Conn. 448, 462, 439 A.2d 408 (1981); *Mather* v. *Griffin Hospital,* supra, 139; *Birgel* v. *Heintz,* 163 Conn. 23, 26, 301 A.2d 249 (1972); *Zarrelli* v. *Barnum Festival Society, Inc.,* 6 Conn. App. 322, 326, 505 A.2d 25, cert. denied, 200 Conn. 801, 509 A.2d 516 (1986).

The jury in this case heard evidence that the plaintiff suffered a severe blow, causing injuries to his neck and back, when his automobile was struck from the rear by the automobile of the defendants. Although the plaintiff was able to resume full-time employment within two months, he experienced significant pain at the time of the accident, and continued to experience such pain from time to time up until the time of the trial. He was treated by physicians and was referred for extensive physical therapy that provided brief symptomatic relief. One of the physicians who had treated him after the accident testified that the plaintiff had sustained a 5 percent permanent partial disability of the back and a 5 percent permanent partial disability of the neck as a result of the accident. By the time of trial, the plaintiff had incurred more than $9000 in medical expenses, most of which had been for physical therapy. A chiropractic physician testified that the plaintiff would continue to require treatment into the future. It was stipulated that the plaintiff, who was nineteen years old at the time of the accident, had a 49.2 year life expectancy at the time of trial.

The plaintiff testified, in addition, that at the time of the accident he had been actively involved in karate classes and that he had been practicing karate one to two hours every night. His karate instructor testified that the plaintiff had progressed rapidly in his karate training, had become a teaching assistant, and had demonstrated the ability to continue to progress toward his goal of earning a black belt.

Taking into consideration the plaintiff's evidence regarding his age, his continuing pain, his need for future physical therapy, and his loss of ability to participate in karate as an avocation or as a career, we conclude, as the trial court did, that the jury's award may have been generous, but that it nevertheless falls "somewhere within the necessarily uncertain limits of

just damages." The award was not so large as to shock this court's sense of justice or to compel the conclusion that the jury was influenced by " 'partiality, prejudice, mistake or corruption.' " *Mather* v. *Griffin Hospital,* supra, 151; *McKirdy* v. *Cascio,* supra.

The judgment is affirmed.

In this opinion the other justices concurred.