WAYNE BLEAU *v.* KIMBERLY WARD ET AL.
(14189)

SHEA, GLASS, COVELLO, BORDEN and BERDON, Js.

Argued December 5, 1991—decision released March 3, 1992

*Neil W. Sutton*, with whom was *Robert B. Adelman*, for the appellant (plaintiff).

*Ralph G. Eddy*, for the appellees (defendants).

SHEA, J. The plaintiff, Wayne Bleau, has appealed to this court[1] from a judgment confirming a jury verdict awarding him $150,000 as damages for personal injuries he suffered as a result of the negligent operation of an automobile by the named defendant, Kimberly Ward. On appeal the plaintiff has raised two rulings of the trial court as grounds for reversal: (1) its refusal to follow the dictates of General Statutes

[1] The plaintiff appealed directly to this court pursuant to General Statutes § 51-199 (b) (2), which allows such an appeal "in any matter where the superior court declares invalid a state statute . . . ." The plaintiff claims that the trial court has effectively invalidated General Statutes § 52-216b.

§ 52-216b,[2] which entitles counsel in personal injury or wrongful death actions "to specifically articulate to the trier of fact during closing arguments, in lump sums or by mathematical formulae, the amount of past and future economic and noneconomic damages claimed to be recoverable"; and (2) its exclusion of certain questions that the plaintiff sought to ask of prospective jurors on voir dire examination concerning their views about the amounts of jury verdicts in personal injury cases. We conclude that the failure to permit argument sanctioned by § 52-216b requires that the judgment be reversed for the purpose of a new trial. We hold, however, that the court did not abuse its discretion by excluding the voir dire questions proposed by the plaintiff.

On June 17, 1984, at approximately 11:20 p.m., the plaintiff was a passenger in an automobile owned by the defendant Richard DeForest, which was being driven by his stepdaughter, Ward. As the car proceeded south on Route 7 in the town of Wilton, it went off the road and collided with various objects, thus causing the plaintiff's injuries. The jury returned a verdict for the plaintiff against only Ward, having found the issues in favor of DeForest.[3] The court denied the

---

[2] General Statutes § 52-216b provides: "(a) In any civil action to recover damages resulting from personal injury or wrongful death, counsel for any party to the action shall be entitled to specifically articulate to the trier of fact during closing arguments, in lump sums or by mathematical formulae, the amount of past and future economic and noneconomic damages claimed to be recoverable.

"(b) Whenever, in a jury trial, specific monetary sums or mathematical formulae are articulated during closing arguments as provided for in subsection (a) of this section, the trial court shall instruct the jury that the sums or mathematical formulae articulated are not evidence but only arguments and that the determination of the amount of damages to be awarded, if any, is solely the jury's function."

[3] The plaintiff has not briefed a claim of error in the charge on the family car doctrine, which was raised in his preliminary statement of issues, and thus is deemed to have abandoned that issue.

plaintiff's motion for an additur as well as his motion to set aside the verdict.

I

The defendants filed a motion in limine to preclude the plaintiff's counsel from stating during closing arguments the amount of damages he claimed to be recoverable by articulating a lump sum or by using a mathematical formula. The motion challenged the validity of § 52-216b, which permits such arguments, on the ground that it trespassed upon the exclusive authority of the judiciary to promulgate rules of practice and procedure and thus violated the separation of powers provision of the second article[4] of our state constitution. See *Adams* v. *Rubinow,* 157 Conn. 150, 156, 251 A.2d 49 (1968).

In granting the defendants' motion, the trial court concluded that it would be fundamentally unfair to permit counsel for the plaintiff to state to the jury the specific amount of damages sought or to suggest a formula for the determination of noneconomic damages when liability is contested. The court held that the attempt by statute to require such argument to be permitted, when to do so in a particular case would be fundamentally unfair, "would interfere with the orderly performance by the Superior Court of its duties to insure a fair trial."

The decision of this court in *Bartholomew* v. *Schweizer,* 217 Conn. 671, 587 A.2d 1014 (1991), in

[4] Article second of the constitution of Connecticut, as amended by article eighteen of the amendments provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another. The legislative department may delegate regulatory authority to the executive department; except that any administrative regulation of any agency of the executive department may be disapproved by the general assembly or a committee thereof in such manner as shall by law be prescribed."

which we upheld the constitutionality of § 52-216b as not violative of the separation of powers principle, was published after the rendition of judgment in the present case. In that decision we construed the statute not "to abrogate the power of the court to discipline attorneys or to control their statements during oral argument as justice may require." Id., 680. "Despite the enactment of § 52-216b, the trial court continues to have the power to monitor closing arguments in the service of justice. The statute does not purport to abrogate the power or the duty of the trial court to comment upon the propriety of counsel's argument . . . to give curative instructions if necessary after the arguments of counsel to prevent prejudice . . . or to declare a mistrial or to set aside a verdict if counsel's comments were so prejudicial that no curative instruction could preserve the parties' right to a fair trial." Id., 681.

In *Bartholomew,* we recognized that § 52-216b had been enacted in order to overrule our holdings in *Carchidi* v. *Rodenhiser,* 209 Conn. 526, 551 A.2d 1249 (1989), and *Pool* v. *Bell,* 209 Conn. 536, 551 A.2d 1254 (1989), that counsel would no longer be permitted to state the amount of damages claimed as compensation in a personal injury case either by specifying a lump sum or by using a mathematical formula. Our review of the legislative history of the statute referred to remarks of a legislator that its purpose was to restore the procedure that had been followed prior to those decisions, under which the propriety of such argument was left to the "broad discretion" of the trial court with regard to the argument of counsel. *Bartholomew* v. *Schweizer,* supra, 680; *Cascella* v. *Jay James Camera Shop, Inc.,* 147 Conn. 337, 342–43, 160 A.2d 899 (1960). In *Levin* v. *Ritson,* 179 Conn. 223, 227, 425 A.2d 1279 (1979), a pre-*Carchidi* decision, we declared: "If the circumstances are such that mention of an estimated value of a case does not create prejudice in the minds

of a jury, the trial court, in its discretion, may allow such argument so long as the jury are instructed that counsel's estimate is not evidence and that the jury's duty is to decide the issues solely on the evidence presented. On the other hand, if the circumstances are such that mention of an expected verdict is either unfounded or based on wholly speculative factors such as those found in many mathematical formulas, or if it is a deliberate attempt by counsel to create prejudice in the minds of the jury, it would not be error for the trial court to direct that such argument not be made or to remove it from the jury's consideration." In *Carchidi,* we concluded that this portion of *Levin* should be overruled because it invited variant rulings in the trial court under similar circumstances.

The defendants maintain that, in prohibiting the plaintiff's counsel from mentioning the specific sum claimed for her injuries or referring to a mathematical formula, the trial court acted well within its discretion as delineated in *Levin,* after having concluded that such argument was fundamentally unfair when liability was disputed in a case. Our notation in *Bartholomew* of some legislative history in the enactment of § 52-216b indicating a desire to return to the pre-*Carchidi* procedure does not, however, allow us to read that statute as vesting in the trial court the virtually unfettered discretion to allow or disallow such argument, as sanctioned by *Levin.* Such an interpretation would ignore the statute's plain language that counsel "*shall be entitled* to specifically articulate . . . the amount of past and future economic and noneconomic damages claimed to be recoverable." (Emphasis added.) We are confident that the legislature never intended that compliance with the statute should be optional.

It is only when compliance with § 52-216b would require a trial court to disregard its constitutional obligation to guarantee a fair trial to the litigants that the

statutory mandate may be deemed to be superseded by that higher law. In *Bartholomew,* we concluded that "the propriety of permitting counsel to argue specific monetary sums for pain and suffering is a matter of public policy, which the legislature has the authority to resolve." Id., 682. In holding that § 52-216b did not trespass upon the authority conferred upon the judiciary as a "separate magistracy" by our state constitution to govern court procedure; *Adams* v. *Rubinow,* supra, 156; and in deferring to the legislative view of the propriety of such argument, which the opinion characterized as a matter of public policy, we implicitly decided that the mention of specific amounts claimed for damages during closing argument did not jeopardize the right to a fair trial under ordinary circumstances. We referred expressly to various measures available to a trial court to implement that right by counteracting any prejudice that might result from such argument, including the power to comment upon counsel's argument, to give curative instructions, to declare a mistrial, or to set aside the verdict. *Bartholomew* v. *Schweizer,* supra, 681.

The trial court found it "fundamentally unfair under the facts and circumstances of this case, where the defendants did not admit liability, to force them to the choice of making no alternative suggestion as to any dollar amount or formula to influence the jury's verdict, or making a suggestion of a sum when the theory on which the case had been tried by the defendants was that the jury should find a defendants' verdict and award nothing." Although *Bartholomew* involved a trial limited to the issue of damages following a summary judgment on liability, our opinion upholding the allowance of argument pursuant to § 52-216b did not rely on the circumstance that liability in that case was uncontested at trial. If we were to hold that, whenever liability is disputed, the kind of argument authorized

by § 52-216b is "fundamentally unfair" in a constitutional sense and, therefore, must be banned in such cases, the statute would have a very limited field of operation, likely to be further narrowed by our holding in cases in which defendants would otherwise have been inclined to concede liability. Defense counsel commonly argue both liability and damages when both issues are in dispute. They are not without sufficient ingenuity and resourcefulness to respond appropriately to a plaintiff's invitation to suggest the amount of an award when liability is disputed. We conclude that the fairness of the trial is not impaired in any constitutional sense by the necessity for compliance with § 52-216b simply because the issue of liability is disputed in a particular case.

We reaffirm our conclusion in *Bartholomew* that § 52-216b does not violate the separation of powers principle of article second, as amended, of the state constitution. We also hold that the statute must be followed unless, in a particular case, the argument it permits would lack any rational basis in the evidence and thus result in a constitutionally unfair trial, a situation not presented in the case before us. Accordingly, we reverse the judgment and order a new trial[5] with respect only to Ward, for failure to comply with the statute.

---

[5] In the concluding portion of his brief, but not in his statement of issues, the plaintiff contends that, if a reversal of the judgment is warranted, the remand should be limited to a hearing in damages, since the erroneous restriction of argument did not involve the issue of liability, which the jury has determined in favor of the plaintiff against Ward. In our more recent decisions, we have ordered a new trial on both liability and damages even when the error found relates only to damages in personal injury cases tried to a jury, because we have concluded that those issues are likely to be "inextricably interwoven" from the viewpoint of a jury. *Fazio* v. *Brown,* 209 Conn. 450, 455–58, 551 A.2d 1227 (1988); *Malmberg* v. *Lopez,* 208 Conn. 675, 681–82, 546 A.2d 264 (1988); see *DeLaurentis* v. *New Haven,* 220 Conn. 225, 268, 597 A.2d 807 (1991). Accordingly, we reject the plaintiff's suggestion for a limited remand.

## II

Because the propriety of the questions the plaintiff sought to ask of prospective jurors on the voir dire is likely to arise at the new trial we have ordered, it is appropriate to resolve that issue at this time. *Falby* v. *Zarembski,* 221 Conn. 14, 26–27, 602 A.2d 1 (1992); *State* v. *Rinaldi,* 220 Conn. 345, 359–60, 599 A.2d 1 (1991). The trial court sustained the defendants' objections to three questions the plaintiff proposed: (1) "If the law and the evidence justified your including in your verdict amounts of money for some of the things we talked about, medical expenses, pain and suffering, permanent disability and the fair, just and reasonable compensation for these elements of damages, when you deliberated with the other jurors, resulted in a verdict that was a large amount of money, would you lower that verdict just because of the amount of money involved?" (2) "Do you think there should be a dollar limit or dollar minimum on jury verdicts?" and (3) "Do you think jury verdicts in the United States have gotten too high?" One of the grounds of the defendants' objection to these inquiries was that the plaintiff's counsel was "prepping witnesses for a large verdict." In its memorandum denying the plaintiff's motion to set aside the verdict, the trial court indicated that the basis for its exclusion of these questions was that they related to the same subjects of prejudice against awarding money as compensation for personal injuries, preconceived limits upon the amount of such awards and the existence of a lawsuit crisis upon which the venireperson involved had been previously examined. The transcript supports the court's view that these questions were largely cumulative and, therefore, were properly excluded.

"We have noted with concern increasing abuse of the voir dire process to the extent that in some instances

it has taken longer to select a jury to try a case than to try the case itself. It appears that all too frequently counsel have engaged in wideranging interrogation of veniremen in a not too subtle attempt to influence the ultimate decision of a venireman if he should be selected for service or to ascertain the attitude of the venireman on an assumed state of facts." *State* v. *Anthony,* 172 Conn. 172, 175, 374 A.2d 156 (1976). "The court has wide discretion in conducting the voir dire . . . and the exercise of that discretion will not constitute reversible error unless it has clearly been abused or harmful prejudice appears to have resulted." *State* v. *Dahlgren,* 200 Conn. 586, 601, 512 A.2d 906 (1986). "[I]t is important that the trial courts, in the exercise of their discretion, be punctilious in restricting counsel's inquiries to questions which are pertinent and proper for testing the capacity and competency of the juror . . . and which are neither designed nor likely to plant prejudicial matter in his mind." *Duffy* v. *Carroll,* 137 Conn. 51, 57, 75 A.2d 33 (1950).

For the purpose of the new trial we should also consider the defendants' objection concerning "prepping" the jurors, which is likely to be repeated even if the same questions are asked in a noncumulative setting. A trial court could reasonably view the first question, which hypothesizes a verdict so large that a juror might be inclined to reduce it simply because of the amount of money involved, as likely to implant in the mind of a venireperson before he had heard any evidence the notion that an exceptionally high award of damages would be warranted in the case to be tried. This was the basis of the defendants' objection and, with respect to this question, it should be sustained. The third question, whether the venireperson considered jury verdicts in the United States to be too high, suffers from a similar vice in that it carries the implication that the reason for the question is that the case to be heard involves

injuries justifying an award that some people would regard as too high. A court would not abuse its discretion by excluding this subtle kind of brainwashing.

The second question, if it had not been accompanied by the inquiries that we have concluded were objectionable, would have less potential for suggesting that the case warranted a large verdict, as it is neutrally phrased. In the context of its two companion questions, however, a trial court would be justified in excluding it. Whether this question alone should be allowed at retrial would fall within the broad discretion vested in the trial court with respect to the conduct of the voir dire.

The judgment is reversed and the case is remanded for a new trial.

In this opinion GLASS, COVELLO and BORDEN, JS., concurred.

BERDON, J., concurring in part and dissenting in part. I agree with the majority that counsel must be allowed to argue damages by suggesting specific amounts, "lump sums or by mathematical formulae," to the jury as provided in General Statutes § 52-216b unless the argument "would lack any rational basis in the evidence and thus result in a constitutionally unfair trial . . . ." Since the trial court failed to follow the statute, and there was no evidence that the argument would have lacked a rational basis, a new trial is required.

That new trial, however, should be limited to damages. Early on we recognized the injustice of requiring the retrial of both liability and damages when there was merely an error that affected damages. In *Smith v. Whittlesey*, 79 Conn. 189, 193–94, 63 A. 1085 (1906), the court held the following: "The only error apparent in the record or claimed upon appeal is one affecting the assessment of damages. Other material issues

submitted to the jury have been found for the plaintiff, to wit: that while [the] plaintiff and [the] defendant were traveling the same course on the public highway, the defendant carelessly drove his vehicle against that of the plaintiff and hurled the plaintiff against the wheel of his vehicle whereby the plaintiff was severely injured; that the plaintiff as well as the defendant at the time of the injury was traveling in a vehicle for the conveyance of persons as described in . . . the General Statutes. These issues have been legally settled, and the error of the court in respect to damages may be fully corrected without a retrial of these issues. In such a case it is plain that the issues rightly settled ought not to be reopened, and this court has the power to qualify its order for a new trial by limiting the retrial to that part of the case in which alone there is any error. . . . This principle may be applied to trial by jury when its application is necessary to do justice to the parties." (Citations omitted.) See *Davenport* v. *Bradley*, 4 Conn. 309, 311 (1822). Indeed, we have continued to remand jury cases for a new trial only on damages when the error was limited to that issue. E.g., *Peck* v. *Jacquemin*, 196 Conn. 53, 491 A.2d 1043 (1985); *Ryszkiewicz* v. *New Britain*, 193 Conn. 589, 479 A.2d 793 (1984); *Seals* v. *Hickey*, 186 Conn. 337, 441 A.2d 604 (1982).[1]

The majority claims that a new trial as to liability and damages is necessary in this case because "those issues are likely to be 'inextricably interwoven' from the viewpoint of a jury." By that I take it the majority believes there is a likelihood the jury compromised the issue of liability when it reached its verdict. It is fundamental,

---

[1] I concede that in the past we have on occasion remanded the matter for a full trial on both liability and damages when there was an error on only the issue of damages. Those cases, however, involved matters in which serious issues of contested liability were raised. E.g., *Fazio* v. *Brown*, 209 Conn. 450, 451–52, 551 A.2d 1227 (1988) ("The accident occurred in the early evening hours as [the plaintiff], wearing dark clothing, and riding his motorcycle without lights, was crossing the defendants' driveway.").

and I have no reason to believe that it was not done in this case, that the jury is instructed that they are to determine the issues of liability first, and unless they have found those issues in favor of the plaintiff the jury may not proceed to consider damages. E.g., 1 D. Wright, Connecticut Jury Instructions (2d Ed. 1970) § 222f.[2] It is reasonable to assume that the jury followed the instructions of the trial court and did not consider damages unless it first determined that there was liability. "[J]urors are presumed to follow the instructions given by the judge." *State* v. *Williams*, 202 Conn. 349, 364, 521 A.2d 150 (1987).

When there is no error in the liability portion of the case, it generally serves no purpose to retry the issue. Only in the most exceptional case should we order on remand a full trial when the only issue on appeal is a claim of error on damages. This is not such a case. The plaintiff was injured when he was a passenger in a vehicle operated by the defendant Ward that was involved in a one car collision, and there was no issue of liability raised on appeal. Indeed, in this case Ward did not request a remand for a full trial if error was found. To require the relitigation of liability would only result in unnecessary costs for the litigants and add to an overburdened judicial system.

I also disagree with the majority that the questions the plaintiff sought to ask the prospective jurors were improper as implanting in the mind of "a venireperson . . . the notion that an exceptionally high award of damages would be warranted . . . ." During the last

---

[2] For example the substance of the following jury instruction is routinely given: "Now, unless or until you come to the conclusion that one or more of these defendants were negligent, and that such negligence was the proximate cause of the plaintiff's injuries, you have no occasion whatsoever to consider the question of damages. I speak of damages only because there is law in connection therewith which I must give you in the event that you get that far in your considerations. If you *do* come to the conclusion that any or all of the defendants were negligent, and that such negligence was the proximate cause of the injuries in the given case, then you must turn to the question of damages." (Emphasis in original.) 1 D. Wright, Connecticut Jury Instructions (2d Ed. 1970) § 222f.

decade there have been extensive national campaigns advertising that high jury awards have caused increases in the costs of automobile insurance premiums. This was a case of serious personal injuries for which a jury could award a substantial amount of damages. Indeed the plaintiff appealed from the denial of his motion to set aside a verdict of $150,000 in his favor that Ward was obviously content to pay.

These questions by the plaintiff's counsel; see p. 339 of the majority opinion, supra; were designed to ferret out whether the prospective juror had been exposed to those advertising campaigns, and if so, to determine whether that would prevent that person from awarding substantial damages if the evidence justified such an award. They were also formulated to determine whether the prospective juror would reduce an award that was fair, just and reasonable merely because of the amount involved, or would be inclined to place artificial limits on an award. They were perfectly proper questions and are routinely allowed. Although the extent of the voir dire examination of prospective jurors rests largely in the discretion of the trial court; *State* v. *Hernandez,* 204 Conn. 377, 381, 528 A.2d 794 (1987); in exercising its discretion the trial court "should grant such latitude as is reasonably necessary to accomplish the twofold purpose of voir dire: to permit the trial court to determine whether a prospective juror is qualified to serve, and to aid the parties in exercising their right to peremptory challenges." *State* v. *Fritz,* 204 Conn. 156, 161, 527 A.2d 1157 (1987). " '[I]f there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision of the case, the party who may be adversely affected should be permitted questions designed to uncover that prejudice. . . .' " *State* v. *Rogers,* 197 Conn. 314, 318, 497 A.2d 387 (1985).

Although the subject matters of the disallowed questions were proper, I agree with the trial court that they were adequately covered by prior questions to the

prospective juror. The trial court wrote the following in its memorandum of decision on the motion to set aside the verdict: "The juror had already indicated in response to plaintiff's counsel's questions that had previously been permitted by the court that nothing about the concept of money damages being awarded for personal injuries bothered him; nor was he specifically troubled about compensation for medical expenses, pain and suffering or permanent disability; and had no preconceived specific dollar amount which he would not go above or below no matter what the evidence in the case showed. Counsel was also permitted to ask if the venireperson thought there was a lawsuit crisis and the venireperson replied, 'No.' The court is satisfied that the plaintiff had an adequate and fair opportunity to inquire of prospective jurors as to possible bias or inability to fairly serve." It is well within the trial court's discretion to exclude repetitious questions or questions on the subjects that were adequately explored. *State* v. *Marsh,* 168 Conn. 520, 523, 362 A.2d 523 (1975).

Not content with sustaining the trial court on the grounds that the voir dire questions were properly excluded because they were cumulative, upon which we all agree, the majority goes further and actively reaches out to hold at least two of those questions to be, as a matter of law, improper. The permissible content of the voir dire questions cannot be reduced to simplistic rules, but must be left fluid in order to accommodate the particular circumstances under which the trial is being conducted. Thus, a particular question may be appropriate under some circumstances but not under other circumstances. The majority fails to recognize this.

Accordingly, I concur with the majority regarding the right to argue monetary amounts to the jury, but I respectfully dissent to the majority's remand that directs a retrial on the issue of liability as well as damages and to the majority's conclusion that the subject matters of the voir dire questions were improper.